## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

REV. TAMESHA N. BOYD,
a/ka/ Zalaina Carpenter, on behalf
of myself, my children,
my tribe as Black Americans, as
a Black nation,

Plaintiff,

     v.                                    1:25-CV-225
                                                        (DNH/MJK)

UNITED STATES GOVERNMENT, *et. al.*,

Defendants.

---

REV. TAMESHA N. BOYD, Plaintiff, *pro se*

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD, SENIOR U.S. DISTRICT JUDGE:

### ORDER and REPORT-RECOMMENDATION

Plaintiff commenced this action on February 19, 2025, by filing a complaint (Dkt. 1). Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP"). (Dkt. 2). The Clerk has sent Plaintiff's complaint and IFP application to this Court for review. (Dkt. 1, 5).

## I.  **IFP Application**

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. 5). After reviewing her application, this Court finds that Plaintiff is financially eligible for IFP status.

1

In addition to determining whether a plaintiff meets the financial criteria to proceed IFP, courts must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which states that courts shall dismiss a case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Although courts have a duty to show liberality toward *pro se* litigants and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, courts still have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal,* 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.    **Complaint**

The Court will not provide a full recitation of the facts giving rise to Plaintiff's alleged claims against the various Defendants. In short, Plaintiff claims that she, together with her children, have been denied "essential healthcare, exacerbating [her] physical and psychological injuries." (Compl., Dkt. 1, at 12).[1] Plaintiff alleges that despite "repeated requests for necessary care [s]ince 2014, Plaintiff's [] medical conditions have **worsened**," including the loss of [her] **reproductive organs**, due to lack of medical competence …" (Compl., at 23) (emphasis in original). According to

---

[1] All page references are to those assigned by the CM/ECF pagination system.

3

the complaint, the Albany County Department of Social Services, together with the Social Security Administration, "have consistently **denied healthcare** and treatment necessary for **Plaintiff's survival** …" (*Id.*) (emphasis in original).

The complaint further alleges that the Social Security Administration, the Internal Revenue Service, and U.S. Treasury Department have shared Plaintiff's "**personal, medical, and financial data** with **private corporations** and other government entities, with no regard for **due process** , and without Plaintiff's consent or knowledge." (Compl., at 24) (emphasis in original). According to the complaint, Plaintiff alleges that the Albany County Department of Education failed her two oldest children and "separated [them] from [Plaintiff] during their most critical developing moments to corrupt them into being criminal[s] one day " (Compl., at 25). Plaintiff seeks monetary and non-monetary relief.

## III.  **Statute of Limitations**

Claims brought under Section 1983 generally must be filed within three years of the date a claim accrues.[2] Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

---

[2] The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. See N.Y. C.P.L.R. § 214(5).

Here, the complaint alleges that Plaintiff's family has been denied healthcare since **2014** (Compl., at 6, 12, 33), that Plaintiff has been "forced to earn money for the government" since **2008** (Compl., at 23), and that the Social Security Administration has detained Plaintiff's records since **2014** (Compl., at 25). To the extent the complaint asserts § 1983 claims, they accrued as early as 2008 and as late as 2014, and in either scenario, they appear to be time barred unless they are subject to an exception – the continuing violation doctrine and/or equitable tolling.

Equitable tolling is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). New York law recognizes the equitable tolling doctrine where a plaintiff demonstrates that they were induced by fraud, misrepresentations, or deception to refrain from timely commencing an action, and that they acted with due diligence throughout the period to be tolled. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007); *see also Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.").

"[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively

constitute one unlawful [act],' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Given the unintelligible nature of the complaint, the Court cannot discern whether the continuing violation doctrine and/or equitable tolling are available to preserve Plaintiff's claims.

To the extent that Plaintiff asserts claims not arising under § 1983, the complaint does not plausibly allege when they accrued, leaving the Court unable to determine whether they are time barred or subject to one of the exceptions enumerated above.

The Court recommends that the complaint be dismissed without prejudice as untimely, and that plaintiff be afforded leave to plead facts, to the extent they exist, that would support the court's application of the continuing violation doctrine and/or equitable tolling.

## IV.    **Fed. R. Civ. P. 8 and 10**

Fed. R. Civ. P. 8(a)(2) requires a pleading to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief …" "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted). Rule 8

also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Accordingly, allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Next, as relevant here, Fed. R. Civ. P. 10 provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances … If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).

A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (a

court may dismiss a complaint for failure to comply with Rule 8(a) where it "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised").

Here, the complaint is largely unintelligible and, in most instances, is nothing more than a rambling dissertation on what Plaintiff perceives to be historical injustices. As presented, neither the Court nor Defendants can reasonably be expected to identify Plaintiff's claims. *See Ghosh v. New York City Housing. Auth*ority, No. 21-CV-6139, 2023 WL 3612553, at *6 (S.D.N.Y. Feb. 27, 2023) ("It is not the Court's job—nor the opposing party's—to decipher a complaint that is 'so poorly composed as to be functionally illegible.'" (quoting *Avramham v. N.Y.*, 2020 WL 4001628, at *2 (S.D.N.Y. July 15, 2020)). Given the arduous task of understanding Plaintiff's complaint, the Court cannot thoughtfully evaluate whether the allegations state a claim for relief. The Court therefore recommends that even if the complaint is not dismissed as time barred, it should nevertheless be dismissed under Fed. R. Civ. P. 8 and 10 without prejudice and with leave to amend.

## V.    <u>Minor Children</u>

"A litigant in federal court has a right to act as his or her own counsel." *Cheung v. Youth Orchestra Found*, 906 F.2d 59, 61 (2d Cir. 1990) (citing 28 U.S.C. § 1654). "The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." *Id*. However, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Id*. This is

because the choice to appear *pro se* is not a true choice for minors who, under state law, cannot determine their own legal actions. *Id*. (citing Fed. R. Civ. P. 17(b)). Minor children "are entitled to trained legal assistance so their rights may be fully protected." *Cheung*, 906 F.2d at 61. Thus, the "court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child."[3] *Fauconier v. Comm. on Special Educ*., No. 02-CV-1050, 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003), *aff'd sub nom. Fauconier v. Comm. on Special Educ*., 112 F. App'x 85 (2d Cir. 2004). Accordingly, even if this action is not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the non-attorney Plaintiff may not appear *pro se* on behalf of her minor children, and the complaint must therefore be dismissed as asserted on their behalf without prejudice.

## VI. <u>Tribe as Black Americans and Black Nation</u>

The complaint, to the extent it purports to assert a class, collective or representative action on behalf of the "Tribe as Black Americans [and] as a Black Nation," must be dismissed without prejudice and with leave to amend, but only if counsel is retained. The Second Circuit has held that "because *pro se* means to appear for one's self a person may not appear on another's behalf in the other's cause."

---

[3] The Second Circuit has carved out limited exceptions to this general rule, including for claims filed on behalf of minors under the Individuals with Disabilities Education Act ("IDEA") and actions relating to social security benefits. Liberally construed, plaintiff's complaint does not fall within any of the noted, limited exceptions.

*Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). Courts have applied this principle to preclude *pro se* litigants from bringing class action claims. *See Kimber v. Tallon*, 556 F. App'x 27, 28 (2d Cir. 2014) (summary order) ("Generally, it is inappropriate for a *pro se* litigant to represent the interests of a class."); *see also Rodriguez v. Eastman Kodak Co*., 88 F. App'x 470, 471 (2d Cir. 2004) (explaining that it is "well established" that a *pro se* litigant "cannot adequately represent the interests of other class members") (summary order); *Chapman v. U.S. Dep't of Justice*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021) (dismissing a plaintiff's class action claims because he was "proceeding *pro se* and cannot bring a class action on behalf of others"). The Court therefore recommends that the complaint be dismissed without prejudice and with leave to amend but only if counsel is retained, as to those on whose behalf Plaintiff asserts claims.

## VII.  <u>New York State Department of Education</u>

The Court recommends that Plaintiff's claims against the New York State Department of Education be dismissed with prejudice and without leave to amend.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment

10

immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

Even if this action is not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint should nevertheless be dismissed with prejudice and without leave to amend as to the New York State Department of Education. *See Sherman v. Harris*, No. 11-CV-4385, 2012 WL 4369766, at *6 (E.D.N.Y. Sep. 24, 2012) ("The New York State Education Department is a state agency entitled to Eleventh Amendment immunity") (citing *Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 480 (2d Cir. 2002), *cert. denied*, 537 U.S. 1227 (2003)).

## VIII. <u>Albany County Department of Social Services</u>

Although Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state, [i]t does not [] extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Mulvihill v. New York*, 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). "'Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'" *Meyers v. Becker,* No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *4 (N.D.N.Y. Apr. 5, 2023) (quoting *Mulvihill v.*

*New York*, 956 F. Supp. 2d 425, 428 (W.D.N.Y. 2013) (alteration in original) (quoting

*Omnipoint Comm'ns, Inc. v. Town of LaGrange*, 658 F.Supp.2d 539, 552 (S.D.N.Y.

2009)). The Albany County Department of Social Services therefore is not an

appropriate party to this action. *See Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551

(E.D.N.Y. 2013) ("[The [p]laintiffs' claim against the Suffolk County Department of

Social Services must be dismissed because it is not a suable entity."), *aff'd*, 560 F.

App'x 6 (2d Cir. 2014) (summary order). The Court therefore recommends that even if

the complaint is not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the

complaint should nevertheless be dismissed with prejudice and without leave to amend

as to the Albany County Department of Social Services.

## IX.    <u>Federal Government and its Agencies</u>

The Court recommends that Plaintiff's claims against the United States

Government, the Social Security Administration, the Internal Revenue Service, the

United States Department of the Treasury, Donald John Trump Jr., in his official and

individual capacities, and Elon Musk, in his individual and acting official capacities

related to DOGE and other corporate interests, all be dismissed with prejudice and

without leave to amend.

"It is well-settled that the United States, its agencies, and federal officers in their

official capacity, have sovereign immunity from suit and can only be sued with their

consent and under whatever terms Congress may impose." *Hyped Holdings LLC v.*

12

*United* States, No. 22-CV-5340, 2023 WL 6121784 (E.D.N.Y. Sept. 19, 2023) (citing

*Robinson v. Overseas Mil. Sales Corp*., 21 F.3d 502, 510 (2d Cir. 1994) ("Because an

action against a federal agency or federal officers in their official capacities is

essentially a suit against the United States, such suits are also barred under the doctrine

of sovereign immunity, unless such immunity is waived."). "Absent an unequivocally

expressed statutory waiver, the United States, its agencies, and its employees (when

functioning in their official capacities) are immune from suit based on the principle of

sovereign immunity." *Vidurek v. Koskinen*, 789 F. App'x 889, 892-93 (2d Cir. 2019)

(summary order) (citing *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010)).

Accordingly, Plaintiff's claims against the United States, its agencies, President Trump,

in his official capacity, and Elon Musk, in his individual capacity, should all be

dismissed with prejudice and without leave to amend.

Plaintiff's claims against President Trump and Elon Musk, in their individual

capacities, should also be dismissed with prejudice and without leave to amend.

Liberally construed, there are no allegations that plausibly suggest that either President

Trump or Elon Musk engaged in any conduct outside the scope of their employment by

the United States government. Further, there are no facts that Plaintiff could plausibly allege that would give rise to personal liability.

## X.    **Opportunity to Amend**

Generally, before courts dismiss a *pro se* complaint or any part of the complaint *sua sponte*, it should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Based on its initial review of the complaint, the Court recommends that:

(1) the complaint be dismissed without prejudice as untimely with leave to amend to plead facts, to the extent they exist, that would support the Court's application of the continuing violation doctrine and/or equitable tolling;

(2) if not dismissed as time barred, the complaint be dismissed in its entirety pursuant to Fed. R. Civ. P. 8 and 10 without prejudice and with leave to amend;

(3) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed without prejudice and without leave to amend as to Plaintiff's minor children until they are represented by counsel or reach the age of majority;

(4) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed without prejudice and with leave to amend but only if counsel is retained, with respect to claims asserted to be on behalf of "Black Americans" and the "Black Nation;"

14

(5) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed as to the New York State Department of Education with prejudice and without leave to amend;

(6) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed as to the Albany County Department of Social Services with prejudice and without leave to amend;

(7) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed with prejudice and without leave to amend as to the United States Government, the Social Security Administration, the Internal Revenue Service, the United States Department of the Treasury, Donald John Trump Jr., in his official and individual capacities, and Elon Musk, in his individual and acting official capacities related to DOGE and other corporate interests; and

If the District Court approves this recommendation and allows Plaintiff to submit a proposed amended complaint, Plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all her claims in the new pleading and may not incorporate by reference any part of her original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[4] and it is further

**RECOMMENDED,** the complaint be dismissed **WITHOUT PREJUDICE** as untimely, and that Plaintiff be afforded leave to plead facts, to the extent they exist, that

---

[4] The Court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

would support the Court's application of the continuing violation doctrine and/or equitable tolling, and it is further

**RECOMMENDED** that if not dismissed as time barred, the complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 8 and10 **WITHOUT PREJUDICE** and with leave to amend, and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITHOUT PREJUDICE** and without leave to amend as to Plaintiff's minor children until they are represented by counsel or reach the age of majority, and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITHOUT PREJUDICE** and with leave to amend, but only if counsel is retained, to the extent that it asserts claims on behalf of "Black Americans" and the "Black Nation," and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITH PREJUDICE** and without leave to amend as to the New York State Department of Education, and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed as to the Albany County Department of Social Services **WITH PREJUDICE** and without leave to amend, and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITH PREJUDICE** and without leave to amend against the United States Government, the Social Security Administration, the Internal Revenue Service, the United States Department of the Treasury, Donald John Trump Jr., in his official and individual capacities, and Elon Musk, in his individual and acting official capacities related to DOGE and other corporate interests, and it is further

**ORDERED,** that while Plaintiff may file objections to this Order and Report-Recommendation, before Plaintiff submits any amended pleading, she should wait for the District Court to rule on the above Orders and Recommendations, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail.[5]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed . R. Civ. P. 6(a), 6(e), 72.

Dated: April 30, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

_____

[5] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

17

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional
Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff,
pro se.

**AMENDED DECISION AND ORDER** [1]

[1] On October 20, 2016, the Court issued a Decision
and Order upon initial review of plaintiff's
complaint. Dkt. No. 4. This Amended Decision
and Order is issued to correct clerical errors in the
Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1** The Clerk has sent to the Court for review a civil rights
action filed by pro se plaintiff Eddie Houston. Dkt. No. 1
("Compl."). Plaintiff has not paid the statutory filing fee for
this action and seeks leave to proceed in forma pauperis. Dkt.
No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged." *Cash v. Bernstein*, No.
09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26,
2010). Upon review of plaintiff's IFP Application, the Court
finds that plaintiff has demonstrated sufficient economic
need and filed the inmate authorization form required in the
Northern District of New York. Plaintiff's IFP application
(Dkt. No. 2) is granted. [2]

[2] Section 1915(g) prohibits a prisoner from
proceeding in forma pauperis where, absent a
showing of "imminent danger of serious physical
injury," a prisoner has filed three or more actions
or appeals that were subsequently dismissed as
frivolous, malicious, or failing to state a claim
upon which relief may be granted. *See* 28
U.S.C. § 1915(g). Based upon the Court's review
of plaintiff's litigation history on the Federal
Judiciary's Public Access to Court Electronic
Records ("PACER") Service, it does not appear that
plaintiff has accumulated three strikes for purposes
of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for
commencing this action in forma pauperis, and because
plaintiff seeks relief from an officer or employee of a
governmental entity, the Court must consider the sufficiency
of the allegations set forth in the complaint in light of 28
U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of
the United States Code directs that, when a plaintiff seeks to
proceed in forma pauperis, "the court shall dismiss the case at
any time if the court determines that – ... (B) the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B). [3]

[3] To determine whether an action is frivolous, a court
must look to see whether the complaint "lacks an
arguable basis either in law or in fact." *Neitzke v.
Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review
any "complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of a
governmental entity" and must "identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if the
complaint ... is frivolous, malicious, or fails to state a claim
upon which relief may be granted; or ... seeks monetary relief
from a defendant who is immune from such relief." 28 U.S.C.
§ 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d
Cir. 1999) (per curiam) (noting that Section 1915A applies to
all actions brought by prisoners against government officials
even when plaintiff paid the filing fee).

**\*2** Additionally, when reviewing a complaint, the Court may
also look to the Federal Rules of Civil Procedure. Rule 8 of

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

**IV. Summary of the Complaint** [4]

[4]     Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

> [5]    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

> [6]    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

> [7]    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

**B. Eighth Amendment**

**1. Excessive Force Claims**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Failure To Intervene**

*5 The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**3. Deliberate Indifference to Serious Medical Needs**

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas, No. 04-CV-7263, 2008 W L 857528, at \*2 (S.D.N.Y. Mar. 31, 2008)* (quoting *Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)*) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004)* (citing *Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)*). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes, 239 F.3d at 491, overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)* (citing *Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988)*.

**\*7** It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf, 8 Fed.Appx. 140, 144 (2d Cir. 2001); Graham v. R.J. Henderson, 89 F.3d 75, 80 (2d Cir. 1996)*. A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2001)* (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001); see also Ashok v. Barnhart, No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003)* (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003)* (citing *Pell v. Procunier, 417 U.S. 817, 822 (1974)*). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990)*). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith, 850 F.2d 917, 926 (2d Cir.*

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8** In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/ DEP), 2016 WL 3882530, at **4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**D. Fourteenth Amendment**

**1. Equal Protection/Discrimination**

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at *9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Due Process**

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

9

The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

10

The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 26 of 97

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend to Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Houston v. Coffman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury
"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS
Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion
**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 28 of 97

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]     If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 9:16-CV-01009**<br>Houston v. Collman et al | — | N.D.N.Y. | Aug. 15, 2016 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1] The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's

complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2] Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

**II. Initial Review**

**A. Legal Standards**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

---

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

---

**B. Complaint**

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983.

See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld intended exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]    Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

**\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has

Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]      Plaintiff did not provide any transcripts.

### C. Discussion [6]

[6]      As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

 **\*5**  As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7]      The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because

plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a <u>Heck</u> dismissal. The undersigned has included the <u>Heck</u> review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. See <u>Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024)</u> (citations omitted), <u>report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024)</u> ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also <u>Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)</u> ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6**  "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." <u>Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017)</u>

(citing <u>Mireles v. Waco, 502 U.S. 9, 9-10 (1991)</u> (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" <u>Id.</u> (quoting <u>Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)</u>). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." <u>Id.</u> (citation omitted); see <u>Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013)</u> (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." <u>Zavalidroga, 2017 WL 8777370, at *8</u> (citing <u>Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)</u>). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" <u>Id.</u> (quoting <u>Mireles, 502 U.S. at 11-12</u>). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.'" <u>Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014)</u> (quoting <u>Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011)</u> (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." <u>Ceparano, 404 F. App'x at 539</u> (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'" <u>Ceparano, 404 F. App'x at 539</u> (quoting <u>Stump v. Sparkman, 435 U.S. 349, 362 (1978)</u>). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'" <u>Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009)</u> (quoting <u>Mireles, 502 U.S. at 11</u>).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired

Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, that "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)).[9]

[9]    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition

to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

### All Citations

Slip Copy, 2024 WL 4870495

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1. Docket 1:24-CV-00847**<br>Cole v. Smrtic et al | — | N.D.N.Y. | July 08, 2024 | Docket |

**History (2)**

**Direct History (2)**

1. Cole v. Smrtic 🐾
   2024 WL 4870495 , N.D.N.Y. , Nov. 21, 2024

   *Report and Recommendation Adopted by*

2. Cole v. Smrtic
   2025 WL 247901 , N.D.N.Y. , Jan. 21, 2025

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 42 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

KeyCite Blue Flag – Appeal Notification

Appeal Filed by   Ghosh v. New York City Housing Authority,   2nd Cir.,
May 19, 2023

2023 WL 3612553
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Shyamal GHOSH, Plaintiff,
v.
NEW YORK CITY HOUSING
AUTHORITY, Defendant.

21-CV-06139 (AT) (BCM)
|
Signed February 27, 2023

**Attorneys and Law Firms**

Shyamal Ghosh, Elmhurst, NY, Pro Se.

Jason Brett Levin, Cooper Binsky, Jackson Lewis P.C.,
New York, NY, Sye-Eun Ahn, New York, NY, Sean-Patrick
Wilson, Law Department, New York, NY, for Defendant.

**REPORT AND RECOMMENDATION
TO THE HON. ANALISA TORRES**

BARBARA MOSES, United States Magistrate Judge.

 **\*1**  Plaintiff Shyamal Ghosh, proceeding *pro se*, brought
this action against his employer, the New York City Housing
Authority (NYCHA), for what he characterizes as a lengthy
campaign of employment discrimination and retaliation.
After twice amending and then further revising his pleading,
plaintiff filed a 400-page Revised Amended Complaint with
Attachments (RAC) (Dkt. 23), which remains his operative
pleading. Now before me for report and recommendation is
NYCHA's motion (Dkt. 41) to dismiss the RAC pursuant to
Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which
relief can be granted. For the reasons that follow, I respectfully
recommend that the RAC be dismissed pursuant to Fed. R.
Civ. P. 8(a)(2) for failure to plead a short and plain statement.
In the alternative, I recommend that plaintiff's federal claims
be dismissed pursuant to Rule 12(b)(6), and that his state
claims be dismissed without prejudice for want of subject
matter jurisdiction.

## I. BACKGROUND

### A. Facts Alleged by Plaintiff

As discussed in more detail below, the RAC is extremely
difficult to follow. Plaintiff's allegations are disorganized,
rambling, convoluted, and discursive, with many side
trips into issues that do not appear to be related to his
discrimination and retaliation claims. The lack of any
semblance of a chronological structure makes it nearly
impossible to understand the sequence of events, and
plaintiff's idiosyncratic approach to grammar and sentence
structure makes it challenging for the reader to decipher
even relatively short paragraphs. [1] The following summary
represents the Court's best effort to marshal the facts upon
which plaintiff's claims are based. [2]

[1]    As an example: plaintiff alleges that he has been
subject to a campaign of retaliation and harassment
ever since he complained about discriminatory
hiring practices in 2006. He writes: "NYCHA
did not inspire for a good job either since
complaining about discriminatory hiring practices
rather intimidated retaliation against the plaintiff
(Attachment-3, 15). Paragraph 29, 55 are some
instances. One-way NYCHA accepts plaintiff
suggestions (paragraph-56) on the other ways use
supervisor to dominate plaintiff from his creativity.
As a result of a complaint on research scientist
hiring discrimination in 2006 NYCHA never again
call the plaintiff for a research scientist position
plaintiff applied for all those after." RAC ¶ 59.

[2]    As required by well-established precedent, I have
construed the RAC "liberally, reading it with
special solicitude" in light of plaintiff's *pro se*
status. *J.S. v. T'Kach,* 714 F.3d 99, 103 (2d Cir.
2013) (quoting *Harris v. City of New York,* 607
F.3d 18, 24 (2d Cir. 2010)). Additionally, for
purposes of defendant's Rule 12(b)(6) motion, I
accept plaintiff's well-pleaded factual allegations
as true, *see McCarthy v. Dun & Bradstreet Corp.,*
482 F.3d 184, 191 (2d Cir. 2007), and take judicial
notice of relevant documents filed in related legal
actions "to establish the fact of such litigation and
related filings." *Kramer v. Time Warner Inc.,* 937
F.2d 767, 774 (2d Cir. 1991).

 **\*2**  Plaintiff is a 57-year-old resident of Queens, New York,
of "Bangladeshi national origin." RAC ¶¶ 1, 66. Before

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

moving to the United States, he was a "registered health practitioner" in Bangladesh. *Id.* ¶ 48. Since 2002, he has been employed by NYCHA, *id.* ¶ 1, serving as a Housing Assistant in the Marcy Houses complex. *See, e.g.*, Dkt. 23-1 at ECF pp. 69.[3] While employed in that capacity, plaintiff applied for more than 300 open job positions within NYCHA. RAC ¶ 20. These positions included "level one Research Scientist," "level two Research Scientist," "Environmental Health and Safety Officer," "Health Initiatives Senior Manager," "RED Director," and "many other vacancies" in NYCHA's health office. *Id.* ¶¶ 11, 22, 27, 31. Although plaintiff was interviewed for some of these positions in 2005 and 2006, including level two Research Scientist, *id.* ¶¶ 47, 57, he was not selected for promotion. *Id.* ¶ 57.

[3]     In the body of the RAC (consisting of 76 consecutively numbered paragraphs over 26 pages), plaintiff refers to its voluminous attachments by number. However, the attachments themselves (most of which consist of multiple subsidiary documents) are not numbered, slip-sheeted, or otherwise demarcated, and the "filing index" that plaintiff provides (*see* Dkt. 23 at ECF pp. 28-32) is of no assistance. Moreover, because plaintiff has submitted a total of 372 pages of attachments, the Court's electronic case filing (ECF) system split them into two separate docket entries (Dkts. 23 and 23-1). Consequently, in this Report and Recommendation, citations to the attachments appear as "Dkt. __ at ECF p. __." Citations to the voluminous exhibits attached to plaintiff's motion papers follow the same format.

With respect to the level two Research Scientist position, Linda Young, NYCHA's Deputy Director for Employment Hiring, promoted another employee, Ying Meng Lui, over plaintiff. RAC ¶ 22. Mr. Lui, who had been hired into the level one Research Scientist post the year before, was less well qualified for the level two job than plaintiff, but had "racial ties" with Ms. Young. *Id.* ¶¶ 22, 68.[4] "Right after" his 2006 interview for the level two position, plaintiff complained about this alleged discrimination to NYCHA's human resources (HR) department, RAC ¶ 47, but was never again considered for a research scientist position. *Id.* ¶ 22. This was the beginning of a "chronology of retaliation," *id.*, which has persisted ever since, subjecting plaintiff to harassment by multiple NYCHA managers over many years. *Id.* ¶¶ 4, 57.

[4]     Plaintiff does not explain why he believed that he was better-qualified than Mr. Lui for the 2006 promotion to level two Research Scientist at NYCHA.

As part of the campaign of retaliation, NYCHA's HR department deemed plaintiff "unqualified" for many of the positions to which he applied, RAC ¶ 21, resulting in HR not forwarding those applications to the relevant hiring managers, *id.* ¶ 22; *see also* Dkt. 23 at ECF pp. 121-30 (job applications submitted by plaintiff and marked "not qualified"),[5] and by asking him to interview for positions for which he was not qualified or in which he was not interested. RAC ¶ 31. According to plaintiff, NYCHA mangers Brenda Allen and Leroy Scotland further discriminated against him (and "stressed out him") by changing his assignments at work, including changing his building assignment twice (on unspecified dates), despite his good record of rent collections. *Id.* ¶ 58.

[5]     Plaintiff was interviewed for other positions, but did not get them. *See, e.g.*, Dkt. 23 at ECF p. 132 (July 25, 2016 email from plaintiff to NYCHA Executive Vice President Kerri Jew, asking why he was not promoted to Community Service Specialist in 2015 or Resident Engagement Director in 2014 after interviewing for those positions).

Plaintiff also claims that NYCHA personnel placed "negative information in [his] personal record folder," including a 2011 memo unjustly accusing him of using the internet for a Facebook friend invitation at work, a "false lateness report" (on an unspecified date), and other "memos," all of which were "biased." RAC ¶¶ 23-28. The last two "retaliatory memos" were issued in 2018 and 2020.[6] The 2018 memo was removed from his file with the assistance of his union, *id.* ¶¶ 24, 56, but the other memos were not removed, even though the "retaliatory memo issuing managers" were "either transferred (disciplinary action) or demoted or forced to resign ... or already left NYCHA." *Id.* ¶ 25. Some of the negative memos "came from Marcy Houses Assistant Manager Ms. Allison McLean," *id.* ¶ 27, who was hired into that position over plaintiff in 2004, has never liked him, and "never appreciate [sic] the plaintiff's good job performance." *Id.* Plaintiff alleges that on "many occasions" Ms. McLean has publicly announced her intention to "treat[ ] plaintiff differently," *id.*, but does not describe any of those occasions. He further alleges that Ms. McLean shows "favoritism to others" and creates "obstacles to the plaintiff's creative

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 44 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)
2023 WL 3612553

work and better performance." *Id.* Here, plaintiff gives an example: once in 2009, when new NYCHA Chair John Rhea visited Marcy Houses, Ms. McLean allowed housing assistant Stephanie Alonso to meet Mr. Rhea, even though it was Ms. Alonso's "court date," and instead sent plaintiff to "attend court" that day, depriving him of the "privilege" of meeting Mr. Rhea. *Id.* ¶ 27. [7]

[6]    On January 11, 2018, plaintiff was issued a Counseling Memorandum that reprimanded him for taking original tenant folders home with him before or after attending Landlord & Tenant Court on NYCHA's behalf, and advised him that "future instances" of similar conduct "may be the subject of disciplinary action." Dkt. 23-1 at ECF pp. 125-26. On November 2, 2020, plaintiff was issued a memo noting that he failed to complete "required annual reviews" on certain dates, and advising him that "repeated instances" of that conduct "may be subject to future disciplinary action." Dkt. 23 at ECF p. 140. Plaintiff does not allege that any formal disciplinary action was ever taken against him.

[7]    Other managers, however, appreciated plaintiff's work and wrote complimentary notes and memos, RAC ¶¶ 32-34, including one in 2009 praising his "dedication and commitment to NYCHA's rent collection process[.]" *Id.* ¶ 33.

**\*3** Plaintiff's complaints extend far beyond the alleged retaliation and harassment he claims to have experienced. Much of the RAC, and many of its attachments, are devoted to plaintiff's claim that that NYCHA's COVID policies were misguided and poorly executed and his strongly-held view that NYCHA is rife with "nepotism," favoritism, and managerial incompetence. *See, e.g.*, RAC ¶¶ 5, 7-8, 11-14, 18, 31, 34, 36-40, 54, 61. Plaintiff also recites statements by public figures who have been similarly critical of NYCHA. *Id.* ¶¶ 41-42. Although these allegations make up a significant portion of plaintiff's pleading, it is difficult to connect them to his legal claims, which – as described in more detail below – are brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law (NYSHRL), N.Y. Exec. L. § 290 *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-107 *et seq.*, seeking redress for employment discrimination (specifically, failure to promote) based on age, race, and/or national origin, and retaliation arising from the complaints of discrimination

that plaintiff made to NYCHA's HR department in 2006, to NYCHA's Department of Equal Opportunity (DEO) in 2011 (and "on several occasions" thereafter), and to the New York City Commission on Human Rights (CHR) in 2017. *See* RAC ¶¶ 47, 58, 65-76; Plaintiff's Response to Defendant's Motion to Dismiss (Pl. Mem.) (Dkt. 48) at 5. [8]

[8]    Because plaintiff's brief is not internally paginated, all page citations are to the page numbers assigned by the ECF system. I note here that plaintiff's operative pleading also includes a brief reference to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213. *See* RAC ¶ 73. However, plaintiff does not allege any disability, actual or perceived, and does not mention the ADA anywhere else in the RAC, or anywhere in his opposition memorandum. I therefore conclude that, to the extent he intended to plead a claim under the ADA, he has abandoned it. In any event, "[w]hen an ADA claim fails to allege that plaintiff was a 'qualified individual with a disability,' it must be dismissed." *Ramrattan v. Fischer*, 2015 WL 3604242, at \*5 (S.D.N.Y. June 9, 2015).

Plaintiff also complains that he was "mistreated" by the Commission on Human Rights. RAC ¶ 46. After corresponding with the agency for more than two years, plaintiff filed a Verified Complaint with the CHR on or about February 2, 2017, alleging that NYCHA "discriminated against him in the terms, conditions, and/or privileges of his employment by declining to hire or promote him because of his race, color, and age," and by retaliating against him after he opposed "race, color, and age discrimination," in violation of the NCHRL, Title VII, and the ADEA. *Id.* ¶¶ 4, 45; *see also* Dkt. 23 at ECF pp. 156-57 (CHR Compl.) ¶¶ 10-13. However, CHR staff attorney Ya Li "did not submit the complaint as per one plaintiff requested." RAC ¶ 16. Instead, Ms. Li "created intimidation and verbal fear for not accepting a complaint for filing which created enormous negative influence to plaintiff moving with case filing at [CHR]." *Id.*

On May 1, 2017, the Law Enforcement Bureau of the CHR dismissed plaintiff's Verified Complaint, without reaching the merits, pursuant to N.Y.C. Admin. Code § 8-113(a)(5) (permitting dismissal where "[p]rosecution of the complaint will not serve the public interest"). Dkt. 48-2, at ECF p. 34. On May 5, 2017, plaintiff appealed to the full Commission, complaining that Ms. Li had "forbidden me to add many other

Case 1:25-cv-00225-DNH-MJK   Document 4   Filed 04/30/25   Page 45 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

issues in the complaint" and had done so "on purpose," to "reduce the public interest in the case." *Id.* at ECF p. 27.

On October 5, 2017, the CHR affirmed the dismissal. Dkt. 23 at ECF p. 154. This left plaintiff free to file his NYSHRL and NYCHRL claims in state court. *See* N.Y.C. Admin. Code § 8-502(f); Affirmation of Zoey Chenitz (Chenitz Aff.) (Dkt. 48-5, at ECF p. 4) ¶ 9. Instead, plaintiff filed a petition under N.Y. C.P.L.R. Art. 78, challenging the CHR dismissal. Dkt. 23 at ECF pp. 142-153. In its opposition to the Art. 78 petition, CHR explained that it dismissed plaintiff's claims because "it was unlikely that further investigation would result in a finding of probable cause." Chenitz Aff. ¶ 14. In particular, "it appeared Mr. Ghosh was not qualified for the jobs he sought[.]" *Id.* ¶ 20. In addition, plaintiff's pre-filing correspondence with NYCHA showed that "he blamed nepotism and favoritism for his failure to advance at NYCHA, not discrimination based on age, color, race, or religion or retaliation based on opposing discrimination." *Id.* ¶ 21. Thus, the Commission determined "that it was unlikely that further investigation would uncover evidence that NYCHA discriminated or retaliated against Mr. Ghosh and that the Commission's limited public resources would be better deployed elsewhere." *Id.* ¶ 22.

**\*4** Plaintiff's Art. 78 petition was dismissed by means of an order issued from the bench on July 30, 2018 and entered on September 5, 2018. Dkt. 23 at ECF pp. 143-151. More than two years later, on March 23, 2021, the U.S. Equal Employment Opportunity Commission (EEOC) issued a Dismissal and Notice of Rights letter, stating that it adopted the local agency's findings and informing plaintiff of his right to initiate a lawsuit under Title VII, the ADEA, or other federal statutes within 90 days. *Id.* at ECF p. 141.

### B. Procedural Background

Plaintiff filed his original Complaint (Dkt. 1-1) on June 17, 2021 in New York Supreme Court, New York County. The Complaint was nine pages long, difficult to follow, and referred to numerous attachments and exhibits. However, only one document was actually attached: the EEOC's right-to-sue notice. *Id.* NYCHA removed the case to this Court on July 19, 2023 (Dkt. 1), and filed its Answer on July 27, 2021. (Dkt. 6.) The Hon. Analisa Torres, United States District Judge, referred the case to me for general pretrial management. (Dkt. 4.)

On September 29, 2021, following an initial case management conference, I gave plaintiff leave to amend his pleading and explained the federal pleading standard to him:

> [P]laintiff must, in accordance with Fed. R. Civ. P. 8, provide a short and plain statement of the relevant *facts* supporting each claim he asserts. His amended complaint should tell the Court, to the extent possible: *which* statutes or laws he is suing under; *what* NYCHA did to violate each of those statutes or laws; *who* committed those violations on its behalf; *when* such violations occurred; *how* plaintiff was injured thereby; and *what* relief he seeks.

Order dated September 29, 2021 (9/29/21 Order) (Dkt. 13) at 1 (emphases in the original). On October 29, 2021, plaintiff filed his Amended Complaint (Am. Compl.) (Dkt. 14), which was ten pages long, difficult to follow, and referred to numerous attachments and exhibits. However, no documents were actually attached.

By letter dated November 9, 2021 (Def. 11/9/21 Ltr.) (Dkt. 16), NYCHA sought "clarification and guidance" from the Court in light of plaintiff's failure to "follow the Court's instructions." Def. 11/9/21 Ltr. at 1. NYCHA noted that the Amended Complaint invoked two federal statutes – Title VII and 42 U.S.C. § 1983 – but failed to "clearly set forth what actions NYCHA specifically took (or failed to take) that violated these two statutes," or when. *Id.* Defendant was also confused by plaintiff's reference to "dozens of different documents or related exhibits" that were referenced in but not attached to his filing. *Id.* at 2. NYCHA asserted that the Amended Complaint was too vague for it to answer, and that it could not even determine the "scope of potentially relevant facts and witnesses," *id.*, which made it difficult to respond to plaintiff's first set of written discovery responses (served the day before, although I had not yet set a discovery schedule). *Id.* NYCHA requested an adjournment of the next case management conference until these issues could be addressed. *Id.*

On November 12, 2021, I adjourned the upcoming conference, extended NYCHA's answer deadline, and

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 46 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

directed plaintiff to "revise and refile his Amended Complaint, so as to comply with this Court's [9/29/21 Order] no later than November 24, 2021." Order dated November 12, 2021 (11/12/21 Order) (Dkt. 17) at 1. For plaintiff's benefit, I reviewed the federal pleading standards once again, and explained that the Amended Complaint did not meet those standards because, although it appeared to allege unlawful retaliation, it "does not clearly identify either the conduct that led to the alleged retaliation ... or the conduct that constituted the alleged retaliation," and did not "state when either the protected activity or the alleged retaliation occurred." 11/12/21 Order at 1-2. I also directed plaintiff to include any documents he referenced as "attachments" in the pleading. *Id.* at 2. After requesting and receiving an extension of time (Dkts. 20, 21), plaintiff filed his Revised Amended Complaint (without attachments) on December 30, 2021 (Dkt. 22), followed by his present pleading on January 3, 2022, and an errata list on January 14, 2022 (Dkt. 24).

**\*5** In the RAC, plaintiff expressly invokes Title VII, the ADEA, the NYSHRL, the NYCHRL and – fleetingly – the ADA. RAC *Id.* ¶¶ 68-73. He adds that the retaliation and harassment against him "reached extreme level and it might be considered as intentional infliction of emotional distress (IIED)." *Id.* ¶ 75. However, he no longer cites or seeks any relief under § 1983. Plaintiff requests relief in the form of placement "in an appropriate position that fit his education and experience (such as NYCHA Health Officer, Health Initiatives Director, Healthy Home Vice President) from where the plaintiff could make the best contribution for NYCHA residents," *id.*, as well as compensatory and punitive damages. RAC ¶ 76.

By letter dated January 18, 2022 (Def. 1/18/22 Ltr.) (Dkt. 25), NYCHA asked again for "guidance," arguing that although plaintiff had multiple opportunities to clarify his claims, the RAC "has gotten no more clear as to which statutory or common law causes of action [plaintiff] wishes to assert against NYCHA, or which specific facts [he] is alleging in support of each individual cause of action he wishes to raise." Def. 1/18/22 Ltr. at 1. Asserting that it still could not "adequately respond" to the RAC without relying on "speculation" and "guesswork" to tease plaintiff's "potential legal theories" out of his "disjoint narrative," NYCHA asked the Court to (i) instruct plaintiff again on "how to file a more definite statement," (ii) dismiss the RAC *sua sponte*, (iii) strike portions of the RAC pursuant to Fed. R. Civ. P. 12(e), leaving only the allegations that "might reasonably support" one or more cognizable claims, or (iv) grant NYCHA leave

to file a motion to dismiss. *Id.* at 2-3. I agreed with defendant that "plaintiff's pleadings have grown lengthier and more convoluted over time," but concluded that he was "unlikely to benefit from yet another opportunity to replead, and yet another gentle reminder that Rule 8(a)(2) requires a 'short and plain statement of the claim.' " (Dkt. 26.) Consequently, I accepted the RAC as the operative pleading in this case and set a schedule for NYCHA's motion to dismiss. (Dkts. 26, 28.)

NYCHA filed its motion, supported by a memorandum of law (Def. Mem.) (Dkt. 42), on April 29, 2022. Judge Torres then expanded my reference to include report and recommendation on dispositive motions. (Dkt. 44.) Plaintiff filed his opposition papers on May 30, 2022, consisting of an initial brief (Dkt. 26), attaching 69 pages of exhibits; a declaration, attaching 46 pages of exhibits (Pl. Decl.) (Dkt. 47); and – later that same day – his revised brief, attaching 114 pages of exhibits. NYCHA filed its reply brief on June 24, 2022 (Def. Reply Mem.) (Dkt. 51), and plaintiff filed an unauthorized sur-reply on July 9, 2022 (Dkt. 52), attaching another 11 pages of exhibits.

## II. THE PARTIES' ARGUMENTS

NYCHA argues: (1) that most of plaintiff's employment-related claims are barred, either because he failed to bring suit within the applicable statute of limitations or because he failed to exhaust his administrative remedies, Def. Mem. at 8-11; (2) that the RAC fails to state a cognizable claim for discrimination, *id.* at 11-13, for retaliation, *id.* at 14-16, or for intentional infliction of emotional distress, *id.* at 16-17; and (3) that no further leave to amend should be granted, as the exercise would be futile. *Id.* at 17.

In response, plaintiff argues: (1) that he has met the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b), Pl. Mem. at 11-15; (2) that the RAC is "simple," "concise," and "direct," in compliance with Fed. R. Civ. P. 8(a), *id.* at 15; (3) that the attachments to the RAC, as well as the additional attachments submitted with his opposition papers, "provide far more detail than is required to defeat a motion to dismiss," *id.* at 17-19; (4) that the RAC adequately pleads a "discriminatory and retaliatory scheme," as well as a "scheme to defraud," in violation of Title VII, the NYSHRL and the NYCHRL, *id.* at 20-23; (5) that the statute of limitations did not begin to run until plaintiff "knew or reasonably should have known of his ... claim," *id.* at 23-24, which was not until 2010, *id.* at 7;[9] and (6) that the RAC adequately pleads a claim for "breach of fiduciary

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 47 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

duty" against NYCHA's directors (who are not named as defendants). *Id.* at 24.

9    Plaintiff explains that although defendant has been discriminating against him "continuously since [his] 2005 and 2006 job application[s]," it "took several years to know the fact," which he discovered "around August 6, 2010," when he "noticed many jobs plaintiff applied [for] was intentionally marked as disqualified." Pl. Mem. at 7; *see also* RAC ¶ 47 (alleging that he filed a complaint with NYCHA's DEO office in 2011).

**\*6** In its reply brief, NYCHA reiterates the points that it made in its moving papers and adds that, to the extent plaintiff seeks to add new claims for fraud and breach of fiduciary duty, he cannot do so in his opposition brief. Def. Reply Mem. at 9.

## III. ANALYSIS

### A. Rule 8(a)(2)

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Both brevity and clarity are required. "[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Moreover, "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Id.*; *see also Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (summary order) ("The purpose of this requirement is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial."). Regardless of its length, therefore, a complaint fails to comply with Rule 8(a)(2) if it is "confused, ambiguous, vague, or otherwise unintelligible." *Strunk*, 68 F. App'x at 235 (quoting *Salahuddin*, 861 F.2d at 42). It is not the Court's job – nor the opposing party's – to decipher a complaint that is "so poorly composed as to be functionally illegible." *Avramham v. N.Y.*, 2020 WL 4001628, at \*2 (S.D.N.Y. July 15, 2020).

A pleading that fails to comply with the command of Rule 8(a)(2) may be dismissed. In our Circuit, such dismissals are not uncommon. *See, e.g.*, *Blakely v. Wells*, 209 Fed. App'x 18, 20 (2d Cir. 2006) (summary order) (affirming dismissal of a 57-page complaint for prolixity); *Nygard v.*

*Bacon*, 2021 WL 3721347, at \*7 (S.D.N.Y. Aug. 20, 2021) (dismissing "lengthy" 144-page complaint pursuant to Rule 8(a)). Indeed, if violative pleadings are not dismissed, they place an "unjustified burden" on the defendants required to respond to them. *Salahuddin*, 861 F.2d at 42. Thus, courts rely on Rule 8(a) not only to dismiss complaints that are unnecessarily prolix, but also complaints that are "unintelligible" or "indiscernible," *Strunk*, 68 F. App'x at 235; complaints that contain "unrelated and vituperative charges that defied comprehension," *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972); complaints that are "convoluted, confusing, and difficult to comprehend," *Phipps v. City of New York*, 2019 WL 4274210, at \*2 (S.D.N.Y. Sept. 10, 2019); and complaints that "ramble," "needlessly speculate, accuse and condemn," and "contain circuitous diatribes far removed from the heart of the claim." *Coon v. Benson*, 2010 (S.D.N.Y. March 8, 2010) (quotation marks and citation omitted).

A plaintiff's *pro se* status will not protect him from a Rule 8(a) dismissal. *See Owens v. McCall*, 5 F. App'x 15, 16 (2d Cir. 2001) (summary order) ("Although a complaint filed by a *pro se* litigant is to be liberally construed in his favor," dismissal was appropriate where "we are no more able than the district court to determine – even under such a liberal construction – the true substance of the plaintiff's claims."); *Coon*, 2010 WL 769226, at \*3 ("[D]espite the liberal construction given to *pro se* complaints, that policy does not mandate that a Court sustain every *pro se* complaint even if it is incoherent, rambling, and unreadable.") (internal citation and punctuation omitted).

**\*7** Moreover, "[a]lthough a plaintiff should generally be given leave to amend following a Rule 8 dismissal," dismissal without leave to amend is proper where "prior leave to amend was generously extended and the successive pleading remains prolix and unintelligible." *Strunk*, 68 F. App'x at 235 (affirming dismissal of *pro se* complaint with prejudice after "the District Court allowed Strunk to amend three times and instructed Strunk how to cure the pleading defects each time"); *see also Dyson v. New York Health Care, Inc.*, 353 F. App'x 502, 503 (2d Cir. 2009) (summary order) (affirming dismissal of *pro se* complaint with prejudice after "the district court afforded Dyson three opportunities" to "comply with Rule 8(a)(2)"); *Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 33 (2d Cir. 2008) (summary order) ("Given the numerous opportunities that Jones has had to clarify or restate his claims, his failure to do so provides a

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 48 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

sufficient basis for a finding that granting him leave to amend his complaint would be futile").

Here, as in *Strunk, Dyson,* and *Jones,* plaintiff has already been given multiple opportunities to amend his complaint, but it remains largely unintelligible. While plaintiff sprinkles legal terms like "discrimination," "retaliation," and "harassment" liberally throughout his pleading – frequently enough to inform the reader of the nature of the claims he is attempting to bring – the underlying facts are obscured within a convoluted series of paragraphs that make it difficult to understand who did what to whom, or when, much less why the plaintiff believes that any of the slights and injustices he lists (including, by way of example, not being promoted to level two Research Scientist in 2006, not being permitted to meet Mr. Rhea in 2009, having his building assignments changed on unspecified dates, being unjustly accused, by unnamed supervisors, of "using net for Face Book friend invitation" in 2011, and not being promoted to Community Engagement Specialist in 2015) constituted discrimination based on his age, race, or national origin, or were inflicted upon him in retaliation for protected conduct such as his multiple internal and external complaints of discrimination.

Moreover, the RAC regularly veers off into lengthy denunciations of NYCHA's COVID policies, nepotism, and general managerial incompetence, *see, e.g.,* RAC ¶¶ 5, 7, 8, 11, 12, 31, 34, 36-40, 61, and devotes several paragraphs to the alleged misconduct of a CHR staff attorney (and various NYCHA attorneys) in connection with plaintiff's 2017 administrative complaint. *Id.* ¶¶ 15-17. These are exactly the sort of "circuitous diatribes far removed from the heart of the claim" discussed in *Coon,* 2010 WL 769226, at *3. What is left of the RAC is largely incomprehensible, extraordinarily difficult to parse, and "so poorly composed as to be functionally illegible." *Avramham,* 2020 WL 4001628, at *2. Its 375 pages of attachments – unlabeled, and presented in no discernable order – unfairly demand that the reader "select the relevant material from a mass of verbiage," *Salahuddin,* 861 F.2d at 42, and the document as a whole is "incoherent, rambling, and unreadable." *Coon,* 2010 WL 769226, at *3.

Plaintiff had multiple opportunities to correct these errors. On September 29, 2021, I instructed plaintiff that his amended complaint "should tell the Court, to the extent possible: *which* statutes or laws he is suing under; *what* NYCHA did to violate each of those statutes or laws; *who* committed those violations on its behalf; *when* such violations occurred; *how* plaintiff

was injured thereby; and *what* relief he seeks." 11/29/21 Order at 1. I gave the same instructions on November 12, 2021, adding that, in order to plead a Title VII retaliation claim, he must clearly identify both "the conduct that led to the alleged retaliation" and "the conduct that constituted the alleged retaliation," and specify the date(s) on which "the protected activity or the alleged retaliation occurred.". 11/12/21 Order at 1-2. Plaintiff failed, for the most part, to follow these instructions.

**\*8**  In *Coon,* the court dismissed plaintiff's amended complaint for failure to comply with Rule 8(a)(2) after he failed to follow the court's instruction that he explain "*who* violated his federally protected rights; *what* facts show that his federally protected rights were violated; *when* such violation(s) occurred; *where* such violation(s) occurred; and *why* Plaintiff is entitled to relief," and instead submitted an amended complaint that "contains conclusory and vague factual allegations regarding his state court litigation, amounting to a long list of accusations about, and objections to, the conduct of various individuals involved in various capacities in that action." 2010 WL 769226, at *3. Those allegations were "combined with conclusory assertions that Plaintiff consequently suffered the violation of his rights to access to the courts and to due process and discrimination on the basis of his disability and his poor person status, caused, in part, by a failure to train or supervise," but the court was still unable to discern, after a careful reading of the amended pleading, "how Plaintiff's federally-protected rights were violated, by whom, and when." *Id.* Similarly, in the case at bar, plaintiff has in effect married a long, rambling, and frequently incomprehensible list of employment grievances with the conclusory charge that all of them – from his failure to rise through the ranks at NYCHA to the negative counseling memos in his file – must be motivated by discrimination based upon his age, race, or national origin, and/or retaliation for his past complaints of discrimination. As a result, the RAC should be dismissed for failure to comply with Rule 8(a)(2).

### B. Rule 12(b)(6)

#### 1. Standards

Even if a complaint meets the "short and plain statement" requirement of Rule 8(a)(2), it is properly dismissed pursuant to Rule 12(b)(6) if it fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 49 of 97
Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)
2023 WL 3612553

its face." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although the district court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy*, 482 F.3d at 191, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A federal court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), and will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

In addition to the facts alleged in the body of the complaint, the court may consider documents "attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); "documents that, although not incorporated by reference, are 'integral' to the complaint," *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)); and documents of which judicial notice may be taken. *Chambers*, 282 F.3d at 153, including pleadings and other documents filed in related legal proceedings. *Kramer*, 937 F.2d at 774.

### 2. *Pro Se* Parties

Where, as here, the plaintiff is *pro se*, his complaint must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *T'Kach*, 714 F.3d at 103. This mandate "applies with particular force when a plaintiff's civil rights are at issue," *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009), and permits the court, in its discretion, to consider factual allegations made in a *pro se* plaintiff's opposition papers (or the attachments thereto)

"as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012); *accord Adeniji v. New York State Off. of State Comptroller*, 2019 WL 4171033, at *2 (S.D.N.Y. Sept. 3, 2019). I have done so here, and have carefully considered the new factual assertions made in plaintiff's opposition papers, and the exhibits attached thereto, to the extent they are consistent with the allegations made in the RAC. However, even a *pro se* plaintiff "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Moreover, the court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).

**\*9** More generally, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks and citation omitted). Consequently, I have not considered plaintiff's unauthorized sur-reply brief, which was filed in violation of Local Civ. R. 6.1. *See Paravas v. Cerf*, 2022 WL 203168, at *2 (S.D.N.Y. Jan. 24, 2022) (noting that "Local Civil Rule 6.1 provides for opening papers, opposition papers, and reply papers, in that order," and disregarding unauthorized "amended affidavit" filed out of time by *pro se* plaintiff); *Sachs v. Matano*, 2016 WL 4179792, at *2 n.5 (E.D.N.Y. July 15, 2016) (declining to consider unauthorized sur-reply brief submitted by *pro se* plaintiff because that plaintiff was obligated, "notwithstanding his *pro se* status, to be aware of and adhere to all applicable procedural rules"), *report and recommendation adopted*, 2016 WL 4186708 (E.D.N.Y. Aug. 4, 2016).

### 3. Plaintiff's Federal Claims Are Largely Time-Barred

Both Title VII and the ADEA require that a plaintiff file a charge of discrimination or retaliation with the EEOC, or with a local employment discrimination agency (such as the CHR), within 300 days of the discriminatory or retaliatory act. 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. § 626(d) (ADEA). "These filing deadlines act as a statute of limitations, and failure to file a timely administrative charge acts as a bar to a federal action." *Johnson v. Wendy's Corp.*, 2021 WL 243055, at *4 (S.D.N.Y. Jan. 25, 2021) (quoting *Lomako v. N.Y. Inst. of Tech.*, 2010 WL 1915041, at *4 (S.D.N.Y. May 12, 2010)). The plaintiff must also receive a right-to-sue letter from the

Case 1:25-cv-00225-DNH-MJK   Document 4   Filed 04/30/25   Page 50 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

EEOC, after which he has 90 days to initiate a lawsuit. 42 U.S.C. § 2000e-5(f); 29 U.S.C. § 626(d). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).

Here, plaintiff attempts to allege discrimination and retaliation claims dating back to 2006, when NYCHA failed to promote him to level two Research Scientist. RAC ¶ 57, 59. But he did not file his Verified Complaint with the CHR until February 2, 2017, *see* RAC ¶¶ 4, 45, Dkt. 23 at ECF pp. 156-57, meaning that he cannot sue for any discriminatory conduct occurring earlier than April 14, 2016, 300 days prior to that filing. Plaintiff's argument that the federal limitations period did not commence until he "knew or reasonably should have known of his ... claim," Pl. Mem. at 23-24, is unavailing, because the limitations period for failure-to-promote claims accrues "when the plaintiff receives notice of the adverse action." *Cetina v. Longworth*, 583 Fed. App'x 1, 3 (2d Cir. 2014); *see also Anderson v. City of New York*, 2017 WL 3251603, at *4 (S.D.N.Y. July 31, 2017) (collecting cases). In any event, the discovery rule for which plaintiff contends would not assist him, because he concedes that he began complaining about employment discrimination to NYCHA's HR department in in 2006, *see* RAC ¶ 47, 59, and to its DEO in 2011. *Id.* ¶ 47. [10]

[10] Plaintiff filed "several" complaints with HR, and several more with DEO. RAC ¶ 47. Additionally, he complained about NYCHA's allegedly discriminatory hiring practices to State Senator Toby Ann Stavisky in 2014, and to State Attorney General Eric T. Schneiderman and U.S. Senator Kirsten Gillibrand in 2016. Dkt. 23 at ECF pp. 165-68.

Nor may plaintiff expand his claims through the "continuing violation" doctrine, under which, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (internal quotation marks omitted). In this Circuit, "the continuing violations doctrine is disfavored outside of a hostile work environment situation, and should only be applied in compelling circumstances."

*Roches-Bowman v. City of Mount Vernon*, 2022 WL 3648394, at *4 (S.D.N.Y. Aug. 24, 2022) (quoting *Williams v. New York City Dep't of Educ.*, 2019 WL 4393546, at *9 (S.D.N.Y. Aug. 28, 2019)). The doctrine is not available at all in failure-to-promote cases, because "failures to promote are 'discrete acts' of discrimination and thus do not implicate the continuing-violation doctrine." *Chin*, 685 F.3d at 156 (2d Cir. 2012); *accord Rowe v. New York State Dep't of Tax'n & Fin.*, 786 F. App'x 302, 304 (2d Cir. 2019). Consequently, in considering whether plaintiff has stated a plausible claim under Title VII or the ADEA, this Court need not consider his allegations concerning events prior to April 14, 2016. [11]

[11] Defendants argue that this Court may also ignore any alleged discrimination or retaliation that occurred after February 2, 2017 (the date on which plaintiff filed his CHR complaint), because plaintiff never amended his administrative charge or filed a new one, "thus rendering any claims that allegedly accrued after February 2, 2017 improper and subject to dismissal for failure to exhaust administrative remedies." Def. Mem. at 10. In fact, as the Second Circuit explained in *Legnani*, a plaintiff need not file a new administrative charge where, as here, he claims that the defendant "retaliated against [him] for filing the initial EEOC charge." 274 F.3d at 686. Consequently, in determining whether plaintiff has stated a cognizable claim under Title VII or the ADEA, the Court properly considers all of NYCHA's alleged conduct after April 14, 2016.

### 4. Plaintiff Fails to Allege a Plausible Federal Discrimination Claim

**\*10** Title VII prohibits employment discrimination against an employee based on the person's "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. The ADEA prohibits "arbitrary age discrimination in employment." 29 U.S.C.A. § 621. Claims brought under Title VII and the ADEA are both analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mitchell v. New York City Dep't of Educ.*, 2021 WL 8013770, at *6 (S.D.N.Y. May 7, 2021) (analyzing Title VII, NYSHRL, and ADEA claims together under the *McDonnel Douglas* standard), *report and recommendation adopted sub nom. Mitchell v. New York City Dep't of Educ.*, 2022 WL 621956 (S.D.N.Y. Mar. 3, 2022); *Dabney*

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 51 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

*v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 450 n.11 (S.D.N.Y. 2013) (addressing discrimination claims based on race, gender, and age together under the *McDonnell Douglas* standard until the "final stage" of the ADEA analysis). Under that standard, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Santiago v. ACACIA Network, Inc.*, 2022 WL 6775835, at *4 (S.D.N.Y. Oct. 10, 2022) (applying *Littlejohn* test to Title VII case); *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 170 (E.D.N.Y. 2017) (applying *Littlejohn* test to ADEA case). Additionally, an ADEA plaintiff must plausibly allege that "age was the 'but-for' cause of the challenged action," that is, "that the adverse employment action would not have occurred without it." *Lebowitz*, 407 F. Supp. 3d at 172.

A plaintiff can support "the proposition that the employer was motivated by discriminatory intent" either "directly, by alleging facts that show an intent to discriminate, or indirectly, by alleging circumstances that give rise to a plausible inference of discrimination." *Lebowitz*, 407 F. Supp. 3d at 170-71; *see also Santiago*, 2022 WL 6775835, at *4 (factual allegations sufficient to raise an inference of discrimination can include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge"). While the plaintiff's initial pleading burden as to the necessary discriminatory intent is low, it is not non-existent. Thus, in a failure-to-hire or failure-to-promote case, it is not enough for the plaintiff simply to allege that he was qualified for a position but did not get it. He must present *facts* – not speculation or conclusions – that "support the proposition" of a discriminatory motivation. *Littlejohn*, 795 F.3d at 311; *see also Iqbal*, 556 U.S. at 678 ("mere conclusory statements" will not do).

The RAC does not meet this standard. A failure to promote can constitute an adverse employment action, *see Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), and plaintiff alleges that he applied for "more than 70 vacanc[ies]" in the "last two to three years," RAC ¶ 11, that is, within the limitations period. However, the only job he claims to have been "highly qualified" for is identified vaguely as the

"topmost position" in the NYCHA Environmental Health & Safety (EH&S) office. *Id.* ¶ 11. As to that position, plaintiff does not provide any facts to support his claim to have been "highly qualified." Nor does he provide any facts to suggest that his race, or national origin was "a motivating factor in the employment decision," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015), much less that his age was "the 'but-for' cause of the challenged action[.]" *Lebowitz*, 407 F. Supp. 3d at 172. No "invidious comments" are alleged, and no information is presented concerning the successful candidate for that position (or for any other positions that plaintiff applied for within the limitations period).

**\*11** To be sure, plaintiff alleges – repeatedly – that NYCHA's failure to promote him was due to discrimination. *See, e.g.*, RAC ¶¶ 5, 45. But these are conclusions, and cannot substitute for the necessary "connective tissue that links [his] protected status to the alleged failure to [promote]." *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019) (dismissing Title VII claim where the plaintiff "alleged no facts" suggesting that "Morgan Stanley's decision not to hire her was based on her gender"); *see also Mitchell*, 2021 WL 8013770, at *8 (plaintiff's "assertion that he was the victim of age, race, and gender discrimination," based only on his "belief and speculation," does not "plausibly establish his discrimination claim"); *Akinsanya v. New York City Health & Hosps. Corp.*, 2017 WL 4049246, at *6 (S.D.N.Y. July 28, 2017) (plaintiff's claim that she was "wrongfully terminated based on race" was insufficient where she failed to provide any "information" about what role, if any, her race "played in her employer's decision to end its employment relationship with her"), *report and recommendation adopted sub nom. Akinsanya v. New York City Health & Hosps. Corp.-Kings Cnty. Hosp. Ctr.*, 2017 WL 4023138 (S.D.N.Y. Sept. 12, 2017).

Besides the failure to promote, plaintiff does not identify any timely and actionable conduct on the part of NYCHA. "An adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks omitted). The memos placed in plaintiff's file, *see* RAC ¶¶ 19, 24, 54 – which did not lead to discipline, demotion, or any other tangible consequence – do not rise to that level. *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 2023 WL 1109702, at *8 (S.D.N.Y. Jan. 30, 2023) ("counseling memos" did not "constitute adverse actions" for purposes of Title VII); *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 468 (S.D.N.Y. 2017) ("negative evaluations of an employee's

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 52 of 97

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

work are not materially adverse employment actions unless such conduct is accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss"); *Watson v. Geithner*, 2013 WL 4028152, at *10 (S.D.N.Y. Aug. 8, 2013) (the issuance of "counseling memos," "unaccompanied by demotion, diminution of responsibilities or the like, does not constitute an adverse employment action for purposes of a discrimination claim"), *report and recommendation adopted*, 2013 WL 5441748 (S.D.N.Y. Sept. 27, 2013). Plaintiff's allegations that he was not given a reference letter "required for admission (2019) in course with GW University," and that "Manager Michael Wyands and RAM Renee Taylor interrupted and harassed the plaintiff [during a] team conference discussion (2021)," RAC ¶¶ 49, 67, fall even further from the mark. Moreover, as with plaintiff's unsuccessful applications for senior positions, the "connective tissue" is missing, *Scalercio-Isenberg*, 2019 WL 6916099, at *5, in that plaintiff offers no "linkage" between these events and his age, race, or national origin. Consequently, plaintiff has failed to plead a discrimination claim under Title VII or the ADEA.

### 5. Plaintiff Fails to Allege a Plausible Federal Retaliation Claim

For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against him, (2) because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). To satisfy the first element, the plaintiff must plausibly allege that the adverse employment action was "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309 (2d Cir. 2017). To satisfy the second element, the plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action," that is, "that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90-91 (cleaned up). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625.

**\*12** Here, plaintiff appears to claim that every setback and slight he has suffered at NYCHA since 2006, when he first complained to its HR department about hiring discrimination,

constitutes retaliation. RAC ¶ 57. He further alleges that the retaliation became "extreme" after he filed his CHR complaint in February 2017. *Id.* ¶ 4. Thus, in plaintiff's view, NYCHA's failure to promote him since 2006 constitutes retaliation (as well as discrimination). *See id.* ¶ 31. Similarly, plaintiff expressly characterizes the counseling memos placed in his file (including those prepared as late as 2018 and 2020) as "retaliatory memos," *id.* ¶¶ 24-25, 29, and appears to believe that NYCHA's failure to give him a reference letter in 2019, and the conduct of Mr. Wyands and Ms. Taylor when they interrupted him during a 2021 team meeting, were also part of a retaliatory campaign. *See* RAC ¶¶ 49, 67.

Once again, however, plaintiff has failed to supply the required causal connection between his protected activity and NYCHA's allegedly retaliatory conduct. He alleges no facts that could constitute "direct evidence of retaliatory animus." *Duplan*, 888 F.3d at 625. To the contrary: as shown by the exhibits submitted with his opposition brief, NYCHA's Executive Vice President, Mr. Jew, affirmatively suggested to plaintiff in 2016 that he "consider seeking relief through an external human rights agency," and helpfully provided "a list of such agencies" for plaintiff's convenience. Dkt. 48-2, at ECF p. 11.

Nor can plaintiff rest on the temporal connection between his complaints and NYCHA's conduct. First, "courts uniformly hold that the temporal proximity must be very close." *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 368 (S.D.N.Y. 2021). Plaintiff, however, has made no effort to tie any particular adverse action to any one of his discrimination complaints. Second, in order to create an inference of retaliatory animus through temporal proximity, a plaintiff must show that the personnel responsible for the alleged retaliation knew about the protected activity. *See Thomas v. DeCastro*, 2018 WL 1322207, at *10 (S.D.N.Y. Mar. 13, 2018) (dismissing retaliation claim where there was no allegation that Encarnacion, the alleged retaliator, was "aware of" plaintiff's participation in an investigation that resulted in Encarnacion being "locked out"); *Mateo v. Dawn*, 2016 WL 5478431, at *8 (S.D.N.Y. Sept. 28, 2016) (plaintiff's failure to allege any knowledge of the protected conduct by the alleged retaliators resulted in a "fail[ure] to establish a plausible causal connection" for the purposes of a retaliation claim); *Lyons v. New York*, 2016 WL 5339555, at *9 (S.D.N.Y. Sept. 22, 2016) ("an employer does not have the opportunity to retaliate until he becomes aware of the protected activity") (quoting *Nielsen v. New York City Comm'n on Human Rights*, 1998 WL 20004, at *10 n.2 (S.D.N.Y. Jan. 20, 1998)). Here,

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

plaintiff does not allege that any of the NYCHA supervisors whose conduct he characterizes as retaliatory were aware of his CHR complaint. Consequently, plaintiff has failed to plead a retaliation claim under Title VII or the ADEA.

### 6. No Leave to Amend Should Granted

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted). Where amendment would be futile, however, leave should be denied. *Jackson v. Wells Fargo Home Mortg.*, 811 Fed. App'x 27, 30 (2d Cir. 2020) (summary order). Here, no amendment could revive the time-barred portion of plaintiff's Title VII and ADEA claims. Moreover, he has already amended his complaint twice, with judicial guidance, resulting in a "lengthier and more convoluted" document but no improvement in readability or substance. (Dkt. 26.) There is thus no reason to believe that, if given yet another opportunity, he could plead a cognizable claim for either discrimination or retaliation. [12]

[12] In his opposition brief, plaintiff appears to raise two entirely new claims, not pleaded in the RAC: (1) fraud, *see* Pl. Mem. at 9-14, 18, 20-22, 26-27, and (2) breach of fiduciary duty by NYCHA's board members, who "supported" the alleged discrimination and retaliation against plaintiff. *Id.* at 24-25. To the extent plaintiff's argument on these points can be construed as a motion for leave to expand his pleading by amendment, that motion should be denied as futile. "The elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *CapLOC, LLC v. McCord*, 2020 WL 1036044, at *14 (S.D.N.Y. Mar. 3, 2020) (Torres, J.) (quoting *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970-71 (2d Cir. 1987)). Here, plaintiff accuses various NYCHA personnel of making false statements *about* him, but has never alleged that he relied, to his detriment, on any false statement made *to* him, and therefore has no basis upon which to assert a claim of fraud. Further, while directors owe fiduciary duties to the corporation or other entity on whose board they sit (and, in the corporate world, to its shareholders), there is no authority for the proposition that they owe such duties to individual employees. *See generally Lazar v. City of New York*, 2022 WL 2953934, at *4 (S.D.N.Y. July 26, 2022) (members of cooperative board owe fiduciary duties to the cooperative and its unit holders, but not to its employees). In any event, fraud and breach of fiduciary duty are state law claims, as to which this Court can and should decline supplemental jurisdiction. *See infra* at Part III(C).

**\*13** "[W]here pleading deficiencies have been identified a number of times and not cured, there comes a point where enough is enough." *State Street Global Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435, 443 (S.D.N.Y. 2020) (quoting *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003)). That point has been reached here. Consequently, plaintiff's federal claims should be dismissed with prejudice.

### C. Plaintiff's State Law Claims

Plaintiff's state law claims – including those brought under the NYSHRL, the NYCHRL, and the common law – are within this Court's supplemental jurisdiction only because they form "part of the same case or controversy" as his Title VII and ADEA claims. *See* 28 U.S.C. § 1367(a). Supplemental jurisdiction may be declined where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Although the statute is phrased in discretionary terms, and there is no "mandatory rule to be applied inflexibly in all cases," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), in the "usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing district court decision to retain supplemental jurisdiction over state law claims after dismissing federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Here, there is no discernable federal interest embedded in plaintiff's state-law claims. Nor do any of the other

Ghosh v. New York City Housing Authority, Not Reported in Fed. Supp. (2023)

2023 WL 3612553

*Cohill* factors militate in favor of this Court retaining jurisdiction over those claims. Although plaintiff's state and local discrimination and retaliation claims are similar to their federal counterparts, they are not identical, and "must be analyzed separately," thus presenting "questions 'best left to the courts of the State of New York.' " *Kalia v. City Univ. of New York*, 2020 WL 6875173, at *7 (S.D.N.Y. Nov. 23, 2020) (quoting *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001)); *see also Davis v. Town of Hempstead*, 2019 WL 235644, at *9 (E.D.N.Y. Jan. 16, 2019) (declining supplemental jurisdiction over NYSHRL claims once there were "no viable federal claims against any defendant"); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 334 (E.D.N.Y. 2014) (declining supplemental jurisdiction over NYCHRL claim after dismissing claims under Title VII and the NYSHRL); *Sklodowska-Grezak v. Stein*, 236 F. Supp. 3d 805, 810 (S.D.N.Y. 2017) (declining supplemental jurisdiction over IIED and other state law claims because the court had dismissed all claims over which it had original jurisdiction and "because of the early stage at which those claims are being dismissed"). Upon dismissal of plaintiff's Title VII and ADEA claims, therefore the Court should also dismiss the remaining state law claims, without prejudice to refiling in state court, for lack of subject-matter jurisdiction.

## IV. CONCLUSION

**\*14** For the reasons set forth above, I recommend, respectfully, that defendant's motion to dismiss be GRANTED, and that plaintiff's claims be DISMISSED WITH PREJUDICE for failure to comply with Fed. R. Civ. P. 8(a)(2). In the alternative, I recommend that plaintiff's federal claims be DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and that this Court decline to retain jurisdiction over his state law claims.

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Analisa Torres at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Torres. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x, 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

## All Citations

Not Reported in Fed. Supp., 2023 WL 3612553

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    13

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Notice of Removal**<br>Shyamal GHOSH, Plaintiff, v. NEW YORK CITY HOUSING AUTHORITY, Defendants.<br>2021 WL 3075503 | — | S.D.N.Y. | July 19, 2021 | Pleading |
| **2. Docket 1:21-CV-06139**<br>Ghosh v. New York City Housing Authority | — | S.D.N.Y. | July 19, 2021 | Docket |

**History (6)**

**Direct History (5)**

⚑ 1. Ghosh v. New York City Housing Authority ☞
2023 WL 3612553 , S.D.N.Y. , Feb. 27, 2023

*Report and Recommendation Adopted by*

⚑ 2. Ghosh v. New York City Housing Authority
2023 WL 3746617 , S.D.N.Y. , Mar. 20, 2023

*Appeal Filed by*

3. Ghosh v. New York City Housing Authority
, 2nd Cir. , May 19, 2023

⚑ 4. Ghosh v. New York City Housing Authority ☞
2023 WL 3612553 , S.D.N.Y. , Feb. 27, 2023

*Appeal Filed by*

5. Ghosh v. New York City Housing Authority
, 2nd Cir. , May 19, 2023

**Related References (1)**
6. Ghosh v. New York City Housing Authority
2021 WL 4480461 , S.D.N.Y. , Sep. 29, 2021

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Avramham v. N.Y., Not Reported in Fed. Supp. (2020)

2020 WL 4001628

2020 WL 4001628
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Moshe AVRAMHAM, also known as Marvin Arnold
Pollack, on behalf of Flores, Mr.; Mr. Flores, Plaintiffs,
v.
The Gvent State of N.Y., et al., Defendants.

20-CV-4441 (LLS)
|
Signed 07/14/2020
|
Filed 07/15/2020

**Attorneys and Law Firms**

Moshe Avramham, New Hampton, NY, pro se.

Flores, New Hampton, NY, pro se.

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

**\*1** Moshe Avramham, also known as Marvin Arnold
Pollack, brings this action on behalf of another individual
known only as Mr. Flores, alleging that the defendants
violated Mr. Flores's federal constitutional rights. The Court
grants *in forma pauperis* status for the limited purpose of this
order. For the reasons set forth below, the Court dismisses the
complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction.
*See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them

to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

The Supreme Court has held that under Rule 8, a complaint
must include enough facts to state a claim for relief "that
is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). A claim is facially plausible if the
plaintiff pleads enough factual detail to allow the Court
to draw the inference that the defendant is liable for the
alleged misconduct. In reviewing the complaint, the Court
must accept all well-pleaded factual allegations as true.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does
not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the Court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

The handwritten complaint is largely illegible and
incoherent. [1] It appears that the action was brought by Moshe
Avramham, also known as Marvin Arnold Pollack, as "next
friend" of a "Mr. Flores" or "Mr. Florese." Both individuals
appear to be patients at Mid-Hudson Psychiatric Hospital.
Although the complaint is extremely difficult to read, it
appears to state that Avramham filed this action "without
consulting, nor getting the permission of" Mr. Flores as Mr.
Flores is "not competent to make legal Decisions." (*See*
ECF No. 1, at 5.) The complaint names approximately 22
defendants.

[1]     On June 16, 2020, the Court received an additional
        submission from Avramham. (ECF No. 2.) That
        submission is equally illegible and incoherent.

**DISCUSSION**

**\*2** Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Because the function of the pleadings is to ensure that defendants receive fair notice of the claims against them and the grounds on which they rest, the allegations must be plainly stated. *See Twombly*, 550 U.S. at 555. An inadequately pleaded complaint that is "so poorly composed as to be functionally illegible" is subject to dismissal under Rule 8. *Schuster v. Oppleman*, No. 96-CV-1689 (JGK), 1999 WL 9845, at \*3 (S.D.N.Y. Jan. 11, 1999); *see Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. 1991) (stating that the policy requiring courts to liberally construe *pro se* complaints "does not mandate that a court sustain every *pro se* complaint even if it is incoherent, rambling, and unreadable"). The Court has closely scrutinized Plaintiff's complaint, but because the complaint is largely illegible and incoherent, the Court is unable to understand the nature of the claims asserted.

And in any event, Avramham may not raise claims on behalf of Flores. A person who is not an attorney may only represent himself in a *pro se* action; he may not represent another person. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("Because [§ 1654] permits parties only to plead and conduct their own cases personally, we have held that an individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause. That is, in order to proceed *pro se*, [a] person must be litigating an interest personal to him.") (citations and internal quotation marks omitted, italics and second alteration in original).

To the extent that Avramham may be asserting that Flores has been deemed incompetent, Rule 17(c) of the Federal Rules of Civil Procedure provides that a minor or incompetent person may be represented by a general guardian, a committee, a conservator, or a similar fiduciary, and that a minor or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. [2] If a person lacks the legal capacity to sue, their action cannot go forward unless a guardian or next friend appears on their behalf; in addition, that person must either be, or be

represented by, an attorney. *See Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009); *Wenger v. Canastota Central Sch. Dist.*, 146 F.3d 123, 125 (2d Cir. 1998) ("[I]t is not in the interests of minors or incompetents that they be represented by non-attorneys.").

[2]    A "guardian *ad litem*" is a guardian appointed by the court to represent a minor or incompetent party in a particular litigation. A "next friend" is a person who is acting for the benefit of a minor or incompetent party in a particular litigation, but who is not appointed as a guardian.

It does not appear that Avramham is an attorney. He may not, therefore, raise claims on Flores's behalf. Any claims Avramham seeks to raise on Flores's behalf must therefore be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in the complaint cannot be cured with an amendment, the Court declines to grant Avramham leave to amend his complaint.

## CONCLUSION

**\*3** The Clerk of Court is directed to mail a copy of this order to Avramham and note service on the docket.

The Court grants Avramham IFP status for the limited purpose of this order.

The Court dismisses the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The dismissal is without prejudice to any claims Flores may assert on his own behalf or through a duly appointed representative, or a guardian *ad litem* or next friend who is an attorney or represented by an attorney.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4001628

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Docket 1:20-CV-04441**<br>Avramham et al v. The Gvent State of N.Y. et al | — | S.D.N.Y. | June 09, 2020 | Docket |

**History**

There are no History results for this citation.

KeyCite Overruling Risk - Negative Treatment

Overruling Risk    Exxon Mobil Corp. v. Saudi Basic Industries Corp.,    U.S.,
March 30, 2005

2003 WL 21345549
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard FAUCONIER, Plaintiff,

v.

COMMITTEE ON SPECIAL EDUCATION, District
3, New York City Board of Education, Defendant.

No. 02 Civ.1050 RCC.
|
June 10, 2003.

**Synopsis**

Noncustodial parent sued special education committee under Individuals with Disabilities Act (IDEA), challenging denial of mainstream educational placement for student. Committee moved to dismiss. The District Court, *Casey*, J., held that: (1) nonattorney parent could not proceed pro se, representing interests of student under IDEA, and (2) *Rooker-Feldman* doctrine barred suit.

Case dismissed.

West Headnotes (2)

**[1]    Infants    ⚷    Schools and education**

Nonattorney parent could not proceed pro se to represent interests of student in suit under Individuals with Disabilities Education Act (IDEA) challenging school committee's decision to retain student in special private education setting rather than mainstreaming him. 20 U.S.C.A. § 1400 et seq.

15 Cases that cite this headnote

**[2]    Courts    ⚷    Constitutional questions, civil rights, and discrimination in general**

*Rooker-Feldman* doctrine, precluding federal court review of state court final judgment,

barred suit under Individuals with Disabilities Education Act (IDEA) by noncustodial parent challenging school district's denial of mainstream educational placement for disabled student; claimant was trying to obtain federal court reversal of state court determination that he could not represent student's interests under IDEA, because he was not custodial parent. 20 U.S.C.A. § 1400 et seq.

3 Cases that cite this headnote

OPINION & ORDER

CASEY, J.

I. Background

**\*1** *Pro se* Plaintiff Richard Fauconier ("Plaintiff") initiated this action on behalf of himself and his son, M.F., [1] against the Committee on Special Education of District 3 of the New York City Board of Education ("Defendant") alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* On July 24, 2002, Defendant filed a motion to dismiss the complaint. By Report and Recommendation ("Report") Judge Ronald Ellis recommended that Defendant's motion to dismiss be granted and that Plaintiff's complaint be dismissed without prejudice. Thereafter, the Plaintiff filed timely objections to the Report. Accordingly, the Court reviews the matter *de novo.* Fed.R.Civ.P. 72(b).

1    In the interests of privacy, the child will be referred to in these proceedings as "M.F."

The Plaintiff is the non-custodial parent of M.F., who has been diagnosed with Attention Deficit Hyperactive Disorder. M.F. is a student at a private institution for emotionally, physically and mentally challenged students. Due to his disability, public funds are used to pay for M.F.'s education.

On five separate occasions, from August, 1994 to March, 2001, M.F. was evaluated by District 3. As a result of each evaluation, District 3 found it to be in M.F.'s best interest that he continue to attend a private educational institution. The Plaintiff, however, sought to have his son placed in a mainstream school. District 3 denied Plaintiff's request

for a reevaluation and transfer of M.F. and declined to include Plaintiff as a member of M.F.'s IEP team. In reaching these decisions, District 3 cited Plaintiff's status as the non-custodial parent.

As a result, on November 5, 2001, Plaintiff filed an order to show cause in an Article 78 Special Proceeding in the State of New York Supreme Court, New York County. Plaintiff sought: (1) a reevaluation of M.F.; (2) placement of M.F. in a mainstream academic setting with support services; (3) permission for M.F. to take the standardized testing for fourth grade math and English; and (4) a position on M.F.'s IEP team with full access to his educational records. By final disposition, the state court denied Plaintiff's claims in light of his non-custodial status. Plaintiff then commenced this federal action on February 11, 2002.

## II. Discussion

[1]    In his Report, Judge Ellis recommended that Plaintiff's complaint be dismissed without prejudice on the ground that under *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), Plaintiff could not proceed *pro se* to litigate M .F.'s interests. For the following reasons, the Court concludes that pursuant to its affirmative duty to enforce the *Cheung* rule, the claims that Plaintiff brings on behalf of his son must be dismissed. Additionally, the Court finds that Plaintiff's remaining claims brought on his own behalf are barred by the *Rooker–Feldman* doctrine.

### A. Representing Children Pro Se

The Second Circuit has made clear in *Cheung* that a court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child. *See id.* at 61. In fact, the Second Circuit in *Cheung* enforced this affirmative duty prior to addressing the jurisdictional issues present in that case. This Court therefore has a duty to enforce the *Cheung* rule, for " '[t]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." ' *Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123, 125 (2d Cir.1998) (quoting *Johns v. County of San Diego,* 114 F.3d 874, 877 (9th Cir.1997). On the other hand, a parent is entitled to represent himself when claiming that his rights under the IDEA have been violated. *Id.* at 126. Here, Counts One and Two of Plaintiff's Amended Complaint are claims that exclusively concern M.F.'s rights. Additionally, Counts Three and Five concern both Plaintiff's and M.F.'s rights. Under

*Cheung,* however, Plaintiff may not litigate the interests of M.F. Therefore, at the outset the Court dismisses Counts One and Two of Plaintiff's complaint. Counts Three and Five are dismissed to the extent that they concern M.F.'s rights. Thus, the remaining claims not barred by *Cheung* are Plaintiff's record-access claim, Plaintiff's claim that he be permitted a seat on M.F.'s IEP team, and his claim that Defendant has violated his Fourteenth Amendment rights.

### B. Rooker–Feldman

**\*2**  [2]    The *Rooker–Feldman* doctrine holds that a party may not take an appeal of a state court decision to a federal court. Plaintiff, however, requests that this Court do precisely that.

Plaintiff's claims that he be permitted access to M.F.'s educational records and that he be given a seat on M.F.'s IEP team were precisely the subject of Plaintiff's order to show cause brought in state court. Therefore, as discussed below, under the *Rooker–Feldman* doctrine these claims may not be re-litigated here. Accordingly, the Court finds that it lacks subject matter jurisdiction over these claims.

A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and therefore may be raised at any time by either party or *sua sponte* by the Court. *Moccio v. New York State Officers of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). Generally speaking, the *Rooker–Feldman* doctrine directs that a federal district court lacks authority to review the final judgment of state courts in judicial proceedings. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). The doctrine is derived from two Supreme Court decisions. In the first, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Court held that appeals from state court judgments are reserved to the Supreme Court, and therefore the lower federal courts lack jurisdiction to entertain such appeals. Sixty years later, in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court extended *Rooker* by barring reconsideration of claims that were implicitly decided by the state court as well. In crafting the "inextricably intertwined" test, the Court held:

> If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 64 of 97
Fauconier v. Committee on Special Education, Not Reported in F.Supp.2d (2003)
2003 WL 21345549

proceeding ... then the district court is in essence being called upon to review the state-court decision. This the district court may not do.

*Feldman,* 460 U.S. at 483–84 n. 16.

Under the *Rooker–Feldman* doctrine, the Court may address two questions: (1) whether a party is attempting to directly challenge a state court decision in federal court and (2) whether such a suit is inextricably intertwined with the previous state court proceedings. Given that a challenge under the *Rooker–Feldman* doctrine as an inquiry into the Court's subject matter jurisdiction, the Court may consider materials extrinsic to the complaint. *Phifer v. City of New York,* 289 F.3d 49, 55 (2d Cir.2002). The Court now turns to this inquiry.

In his attempt to appeal the decision of the state court to the federal courts, Plaintiff asserts that this action contains claims under the IDEA that were never raised in the state court proceeding. *See* Plaintiff's Memorandum of Law ¶ 38. The Court, however, finds Plaintiff's assertion disingenuous. In his November 15, 2001 Affidavit filed in New York Supreme Court, Plaintiff himself stated that his cause of action was partly "governed by the federal Individuals with Disabilities Education Act (IDEA)." Moreover, in state court Plaintiff asserted that despite the fact that he is M.F.'s non-custodial father, *Doe v. Anrig,* 651 F.Supp. 424 (D.Mass.1987), supported his claim that he could still assert claims under the IDEA. *See* Plaintiff's Nov. 15, 2001 Aff. ¶ 7(i). Nevertheless, the state court concluded that because Plaintiff is not the custodial parent, he lacked decision making authority for M.F. *See* Ex. O to Am. Compl.

*3 On December 6, 2001 Plaintiff filed this action contending that the state court was insensitive to the facts forming the basis of his federal claims and that the state

court failed to protect his federal rights. Plaintiff's Amended Complaint asserts that the state court "made no mention of *Doe v. Anrig"* and that "apparently, no judicial notice is taken of cases in federal district courts such as *Doe v. Anrig,* and the educational system's escape of scrutiny is assured." Am. Compl. ¶¶ 33, 34. Accordingly, the Court finds that Plaintiff's pleadings demonstrate that he has brought this action because he is dissatisfied with the state court decision. In effect, Plaintiff is asking the Court to review the state court's determination that he lacks educational decision making authority because he is not the custodial parent. The *Rooker–Feldman* doctrine squarely bars a litigant from complaining of a result in state court by asking a federal court to entertain an appeal of that result. *See Kropelnicki,* 290 F.3d at 128. To consider Plaintiff's claims, the Court would be required to determine whether the IDEA protects the rights of both custodial and non-custodial parents, a question the state court has already ruled upon in this case. This type of request is squarely barred under the *Rooker–Feldman* doctrine. *See Corsini v. Ross,* 152 F.3d 917 (2d Cir.1998) ("[D]istrict courts 'do not have jurisdiction ... over challenges to state court decisions ... even if those challenges allege that the state court's action was unconstitutional .' ") (quoting *Feldman,* 460 U.S. at 486). Accordingly, the Court lacks subject matter jurisdiction in this case.

**III. Conclusion**

For the reasons stated above, under *Cheung* Plaintiff's claims brought on behalf of M.F. are dismissed. Additionally, Plaintiff's remaining claims pertaining to his rights under the IDEA are dismissed under the *Rooker–Feldman* doctrine. The Clerk of the Court is hereby directed to close the case.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21345549

---

                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Petition for Rehearing, for Pro-Se plaintiff-appellant** Richard FAUCONIER Plaintiff-Appellant, v. COMMITTEE ON SPECIAL EDUCATION, District 3, New York City Board of Education, Defendant-Appellee, 2004 WL 3507929 | PDF | C.A.2 | Oct. 14, 2004 | Petition |
| **2. Docket 03-7793** FAUCONIER v. COMMITTEE ON SPECIAL | — | C.A.2 | Aug. 05, 2003 | Docket |
| **3. Docket 1:02CV01050** FAUCONIER v. COMMITTEE ON SPECIAL | — | S.D.N.Y. | Feb. 11, 2002 | Docket |

**History (3)**

**Direct History (3)**

⚑ 1. Fauconier v. Committee of Special Educ.
2002 WL 31235786 , S.D.N.Y. , Oct. 02, 2002

*Report and Recommendation Adopted by*

🔴 2. Fauconier v. Committee on Special Education
2003 WL 21345549 , S.D.N.Y. , June 10, 2003

*Decision Affirmed by*

3. Fauconier v. Committee on Special Educ., Dist. 3, New York City Bd. of Educ.
112 Fed.Appx. 85 , 2nd Cir.(N.Y.) , Sep. 30, 2004

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 68 of 97
Sherman v. Harris, Not Reported in F.Supp.2d (2012)
2012 WL 4369766

2012 WL 4369766
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Calvin SHERMAN, pro se, Plaintiff,

v.

Ms. Laurie HARRIS, Supervisor of Vocational
and Educational Services for Individuals with
Disabilities, Brooklyn Office; Mark Weinstein,
Supervisor and Director of Counseling; Joseph
Tevington, Supervisor; Rebecca Lawrence, Counselor;
James Samuels, Counselor; Judith Schneider, Esq.,
Hearing Officer (All are or have been employed
by VESID); Employees of the University of the
State of New York, the State Education Department
Office of Vocational and Educational Services for
Individuals with Disabilities (VESID), Defendants.

No. 11–CV–4385 (DLI)(JMA).
|
Sept. 24, 2012.

**Attorneys and Law Firms**

Calvin Sherman, Brooklyn, NY, pro se.

Alissa Schecter Wright, NYS Office of the Attorney General,
New York, NY, for Defendants.

*OPINION AND ORDER*

DORA L. IRIZARRY, District Judge.

 **\*1** Calvin Sherman ("plaintiff") commenced this
*pro se* action against defendants Laurie Harris
("Harris"), Mark Weinstein ("Weinstein"), Joseph Tevington
("Tevington"), Rebecca Robinson–Lawrence ("Robinson–
Lawrence"), James Samuels ("Samuels"), and Judith
Schneider ("Schneider") alleging racial discrimination and
retaliation under 42 U.S.C. §§ 1983, 1985(3), 1986 ("Sections
1983, 1985, 1986"), and Title VI of the Civil Rights Act of
1964 ("Title VI"). (*See* Compl. at 3, 11.) Plaintiff principally
claims that defendants, as Vocational and Educational
Services for Individuals with Disabilities ("VESID") staff,
racially discriminated against him when they conditioned
his VESID funding on plaintiff sitting for a psychiatric

examination. Additionally, the Court construes the complaint
to assert discrimination claims under Title IX, 20 U.S.C. §
1681 *et seq.* ("Title IX"), Section 504 of the Rehabilitation
Act, 29 U.S.C. § 794 ("Section 504"), Title II of the
Americans with Disabilities Act of 1990, 42 U.S.C. § 12131
("Title II ADA"), Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Individual
with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*
("IDEA"). (*Id.* at 3, 9–11, 35.) Finally, plaintiff asserts a due
process claim under Section 1983 and a breach of contract
claim under state law. (*Id.* at 7–9.)

Pursuant to Rules 12(b)(1) and 12(b)(6) of the
Federal Rules of Civil Procedure, defendants Weinstein,
Tevington, Robinson–Lawrence, and Mr. Samuels ("moving
defendants") move to dismiss the claims against them in the
complaint. (*See* Decl. in Supp. of Mot. to Dismiss ("Defs.'
Decl."), at 2.) Pursuant to Rule 55(b) of the Federal Rules
of Civil Procedure, plaintiff moves for an entry of default
judgment as to defendants Harris and Schneider. (*See* Doc.
Entry Nos. 24, 25.) For the reasons set forth below, the motion
to dismiss is granted and the motion for default judgment is
denied.

**I. BACKGROUND**

New York Vocational and Educational Services for
Individuals with Disabilities ("VESID") is a state agency
funded by the federal government under the Rehabilitation
Act. It is a subdivision of the New York State Department
of Education and administers New York's vocational
rehabilitation programs to provide counseling and other
services necessary to enable disabled individuals to "prepare
for and engage in gainful employment." 29 U.S.C. § 720(a)(2)
(B). Plaintiff is a disabled African–American man in his early
60's. (Dec. 17, 2010 VESID Hearing Transcript, Compl., Ex.
A ("Tr.") 67 .) Plaintiff previously had attended Medgar Evers
College in 2007 with VESID funding as part of a vocational
program; however plaintiff had academic difficulties and
his VESID case was closed in August 2007. (Tr. 36; *see
also* Ex. I.) On February 4, 2009, plaintiff reapplied for
services with the VESID in order to pursue an Individualized
Plan of Employment ("IPE"), with a work goal of opening
a take-out restaurant. (Tr. 36–38.) Plaintiff met with the
vocational rehabilitation counselor ("VRC") assigned to him,
James Samuels, on February 4, 2009 and again on May 21,
2009 and was discouraged from pursuing the work goal of
opening a restaurant. (*Id.* at 37–38.) Plaintiff claimed this
discouragement was the result of jealousy on the part of

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 69 of 97
Sherman v. Harris, Not Reported in F.Supp.2d (2012)
2012 WL 4369766

Samuels, whom plaintiff alleged was an ex-inmate. (Compl., 10.)

**\*2**  On May 29, 2009, plaintiff met with VRC Supervisor Joseph Tevington to request a new VRC. (Tr. 38.) Tevington set up a new IPE for plaintiff for the fall 2009 semester, which included the work goal of teacher aide, and assigned plaintiff VRC Rebecca Robinson–Lawrence. Under this IPE, VESID would provide financial assistance for books and carfare as long as plaintiff was not on academic probation. (Compl. 9; *see also* Tr. 38–39, 40.) Plaintiff claimed Robinson–Lawrence was negative, "very nasty" and disrespectful to him over the phone, and alleged her behavior was part of a "campaign of harassment" against him led by Tevinton and Samuels. (Compl.25.) After learning of plaintiff's prior criminal conviction, which plaintiff had withheld, Robinson–Lawrence determined the work goal of teacher aide may not be appropriate, because it may be difficult to obtain employment. (Tr. at 46, 89; 178.) Plaintiff refused to work with Robinson–Lawrence during the fall 2009 semester and again requested a different VRC. (Tr. 40–41.) Tevington met with him and Pastor Ken Bogan, who was associated with the Crown Heights Mediation Center, on January 21, 2010 to discuss plaintiff's spring 2010 IPE. (Tr. 41.) Plaintiff previously had been put on academic probation because his grade point average ("GPA") had fallen under the required 2.00. (*Jan. 14, 2010 Letter from Mr. Phifer to Tevington,* Compl., Exh. F.) Plaintiff's IPE work goal was changed to social work aide, and though he had not yet been taken off academic probation, Tevington noted that sufficient progress was made for VESID to offer funding for books and carfare for the spring 2010 term. (*Id.* at 41–45.) Plaintiff's GPA at the time had risen to a 3.7. (Compl.13.) VESID provided plaintiff with assistance for the spring 2010 semester. (Tr. 43, 48.)

During February of 2010, in a series of emails sent to Tevington, plaintiff raised the issue of funding for a $323.47 spring tuition balance, which not been authorized by VESID under his current IPE. Tevington and Robinson–Lawrence believed plaintiff had requested only funding for carfare and books, and he had never asked for tuition. (Tr. 44, 47–48, 96.) However, plaintiff saw this omission as purposeful, blamed Robinson–Lawrence and her "negative and discriminatory behavior" for omitting tuition from his IPE, and stated that, if Tevington ignored his emails, he was also responsible for her discriminatory behavior. (Compl. 12; Tr. 47–48.) Tevington authorized a retroactive tuition payment for the spring 2010 semester on July 26, 2010. (Tr. 53; *see also* Decision and

Order at 6–7, Defendants Declaration of Charles E. Enloe in Support of Motion to Dismiss ("Defs.' Decl."), Ex. A.)

As proof that the omission of tuition funding was purposeful, plaintiff points to a May 14, 2010 letter from Medgar Evers College addressed to Robinson–Lawrence concerning the tuition amount and an April 28, 2010 letter from Medgar Evers College addressed to Ms. Meltz, an employee at VESID, regarding the $323.35 balance that was past due. (Compl. 12; *see also* Compl., Exs. D and E.) From May to June of 2010, plaintiff and Tevington exchanged a series of emails related to college financial aid forms and basic VESID requirements. (*Id.* at 49–51.) Plaintiff's confusion with the forms and requirements and his behavior towards VESID staff, including accusing Robinson–Lawrence of spitefully orchestrating what were actually standard requirements and calling certain employees "racist," raised concerns for Tevington and VESID. (*Id.* at 51–52, 137.)

**\*3**  On July 14, 2010, Tevington, Weinstein, and Robinson–Lawrence met with plaintiff. (Compl. 7–8; *see also* Tr. 57–60.) Prior to this meeting, VESID prepared a new IPE that continued funding for tuition, books, and fees, but required plaintiff to sit for a psychiatric assessment, "to get a better idea as to what services [plaintiff] might need and what he would be able to handle regarding stress and other kinds of tolerances." (Tr. 137–39; *see also id.* at 101–02.) Believing that the psychiatric assessment requirement was racially induced, plaintiff refused and walked out of the meeting. (Compl. 6–8; *see also* Tr. 128.)

Plaintiff requested a hearing under Rehabilitation Act of 1973, 29 U.S.C. 701 *et seq.* Pursuant to plaintiff's request, on December 17, 2010, Judith Schneider, the VESID Impartial Hearing Officer ("IHO"), conducted a hearing to determine:

> Did VESID act appropriately and lawfully under federal and state law and VESID's written policies with regard to the funding of certain college related expenses by, among other things, conditioning continued funding upon Petitioner's agreement to undergo a psychiatric evaluation or were its actions a consequence of racial bias by staff members or

retaliation for claims of racism by Petitioner.

(Decision and Order at 3, Defs.' Decl., Ex. A.) Plaintiff and defendants Tevington, Weinstein, Robinson–Lawrence, and Harris were present and testified, with Harris representing VESID. (*Id.* at 3, 9.) The IHO outlined the hearing's procedures, especially concerning objections; however throughout the hearing, plaintiff interrupted defendants' testimony and made accusatory remarks. (*id.* at 7–11, 23–25); (*see, e.g., id.* at 50–51, 60, 89–94, 117–19; 138–139.) As he does in the complaint, plaintiff repeatedly accused Samuels, Robinson–Lawrence, Tevinton, and Weinstein of being engaged in a conspiracy of racial animus towards him and a "cover-up," but provided no specific instances or occasions of discrimination. (Compl.20–21.) At the VESID hearing, Weinstein explained the purpose of the psychological assessment to plaintiff,

It's really all geared for getting you to work and prepared to work, but [ ] we need to get the background information on your stress tolerances, your ability to handle different situations, what to expect, and the way you were behaving and acting was giving us concern that you were not really showing the kind of adjustment to move towards employment. It was not working.

(*Id* at 148–49.) Further, continued funding would not be contingent on the results of the assessment. (*Id.* at 128 ("Mr. Sherman was asked to agree to go for a psychiatric assessment while he attended school. We were not making anything contingent on anything, we just wanted to have that done.") Plaintiff explained his aversion to the psychiatric assessment was because African–Americans have been victimized in the past through medical and psychological evaluations, and the distortion of the results. (Tr. 168, 179–80.)

**\*4** On April 12, 2011, the IHO dismissed the matter, concluding that VESID's actions were not based on racism or retaliation, but rather VESID had a reasonable and lawful basis for setting a psychiatric evaluation as a condition for continued funding, especially in light of plaintiff's

interactions with VESID staff, his confusion regarding standard college aid forms, and his failure to disclose his prior criminal record. (Decision and Order, at 20, Defs.' Decl., Ex. A.)

Rather than seek review of the IHO decision pursuant to Section 722 of the Rehabilitation Act, plaintiff filed this action on September 9, 2011 alleging various civil rights violations and seeking $4,500,000 in compensatory damages and $4,500,000 in punitive damages. (*See* Compl. 4.) Plaintiff's complaint is a litany of accusatory and conclusory statements that defendants are racist or "Uncle Toms" who are part of a conspiracy to prevent plaintiff from fulfilling his education because of racial animus, but plaintiff does not provide any specific instances of discriminatory actions, nor does plaintiff show he was substantively harmed.

## II. MOTION TO DISMISS

### A. *Legal Standard*

In reviewing this complaint, the Court is mindful that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The Court construes *pro se* pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (emphasis omitted). However, "subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

Here, in addition to the Section 1983, 1985, 1986, Title VI and state law claims, plaintiff appears to assert a variety of claims pursuant to Section 504 of the Rehabilitation Act, the IDEA, Title II ADA, and Titles VII and IX. Though plaintiff does not say whether his claims are against defendants in their individual or official capacities, the Court examines the merit of these claims against defendants in both capacities and in a manner that liberally construes the plaintiff's complaint in light of his *pro se* status.

### B. *Standard of Review*

Subject matter jurisdiction is a threshold issue. Thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *Sherman v. Black,* 510 F.Supp.2d 193, 197 (E.D.N.Y.2007)

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 71 of 97
Sherman v. Harris, Not Reported in F.Supp.2d (2012)
2012 WL 4369766

(citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990)). It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & CorteseCosta P.C. v. Dupont,* 565 F.3d 56, 62 (2d Cir.2009) (quotation marks omitted). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte.*" *Id.* Federal subject matter jurisdiction exists only where the action presents a federal question pursuant to 28 U.S .C. § 1331 or where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See Petway v. N.Y.C. Transit Auth.,* 2010 WL 1438774, at *2 (E.D.N.Y. Apr.7, 2010), *aff'd,* 450 F. App'x. 66 (2d Cir.2011). Federal question jurisdiction is invoked where the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law within the meaning of the general federal question statute only if the federal question appears from the facts of the plaintiff's well-pleaded complaint. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

**\*5** On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002). However, the court need not accept "legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

## C. *Discussion*

### 1. *Title VII and IDEA Claims are Inapplicable and Subject to Dismissal*

Title VII and IDEA only prohibit discrimination against employees and children under 21 years of age, respectively. *See* 42 U.S.C. § 2000e–2; 42 U.S.C. § 1412(a)(1)(A). Since plaintiff is neither an employee of VESID nor under the age of 21, his claims fail to come under the ambit of these statutes and are inapplicable. Accordingly, the motion to dismiss

the Title VII and IDEA claims pursuant to Rule 12(b)(6) is granted in its entirety.

The Court examines the remaining claims as against defendants both in their official capacities and in their personal capacities.

### 2. *Claims Against Defendants in Their Official Capacities are Subject to Dismissal*

**a. Eleventh Amendment Immunity Applies to the Sections 1983, 1985, 1986, Title II ADA and State Law Claims Against Defendants in their Official Capacities**

The Eleventh Amendment's grant of absolute immunity to the states extends to claims for damages against state officials sued in their official capacity. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Eleventh Amendment immunity typically deprives courts of jurisdiction over suits brought by private parties against State entities. *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). However, exceptions to this immunity exist when: (1) Congress has statutorily abrogated immunity, (2) the state voluntarily waives such immunity, or (3) the plaintiff sues for "prospective injunctive relief" from violations of federal law under the *Ex Parte Young* doctrine. *In Re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir.2007).

First, Congress has neither abrogated immunity with respect to Section 1983, 1985, or 1986 claims, *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), nor with respect to State law claims. *Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 540–41, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002). Second, New York has not waived its immunity to such claims. *Finkelman v. New York State Police,* No. 06–CV–8705, 2007 WL 4145456, at *3 (S.D.N.Y. Nov.15, 2007) (explaining New York has not waived its immunity to Sections 1983, 1985, and 1986 claims); *Martin v. Baruch Coll.,* No. 10–CV–3915, 2011 WL 723565, at *2 (S.D.N.Y. Feb. 18, 2011) (explaining New York has not waived its immunity to state law claims brought in federal court). Third, since plaintiff seeks only monetary damages and not injunctive relief, (*see* Compl. 29), the *Ex Parte Young* doctrine does not apply. *Edelman,* 415 U.S. at 677. Thus, no exceptions apply here.

**\*6** The New York State Education Department is a state agency entitled to Eleventh Amendment immunity. *Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz,* 290 F.3d

2012 WL 4369766

476, 480 (2d Cir.2002), *cert. denied,* 537 U.S. 1227, 123 S.Ct. 1284, 154 L.Ed.2d 1088 (2003). As such, the moving defendants, in their official capacities, *a fortiori* are entitled to immunity for the state law breach of contract claim, the Sections 1983, 1985, and 1986 claims, as well as the Title II ADA claim. *See Nicolae v. Office of Vocational & Educ. Services for Individuals with Disabilities,* 257 F. App'x 455, 456–57 (2d Cir.2007) (holding that "VESID's sovereign immunity under the Eleventh Amendment has not been abrogated for purposes of the ADA.... Nor has New York State waived it."). Pursuant to Rule 12(b)(1), defendants' motion to dismiss the Sections 1983, 1985, 1986, Title II ADA, and state law claims against the moving defendants in their official capacities is granted.

**b. Section 504, Title VI, and Title IX Claims Against Defendants in Their Official Capacities Fail to State a Plausible Claim**

The Supreme Court has held that Congress abrogated Eleventh Amendment Immunity under Title VI, Title IX, and § 504 of the Rehabilitation Act. *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 72, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). However, plaintiff's allegations of discrimination do not contain sufficient factual allegations to rise above the level of "legal conclusions," and, therefore, plaintiff fails to state a plausible claim for which relief can be granted under Title VI, Title, IX, or Section 504. *See Iqbal,* 556 U.S. at 678–79.

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To withstand a motion to dismiss for failure to state a claim, plaintiff must allege that he, (1) has a disability for the purposes of Section 504, (2) is otherwise qualified for the benefit that has been denied, and (3) has been denied the benefit by reason of the disability. *Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 146–47 (2d Cir.2002).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a Title VI violation, plaintiff must plausibly claim, in pertinent part, that: (1) defendant discriminated against him on the basis of race, (2) the discrimination was intentional,

and (3) the discrimination was a substantial or motivating factor for defendant's actions. *Tolbert v. Queens College,* 242 F.3d 58, 69 (2d Cir.2001). Title VI is parallel to and operates in the same manner as Title IX, "except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs," *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (internal citations omitted).

**\*7** In the instant case, the central issue for all three claims is whether the requirement to undergo a psychiatric assessment as a condition of continued VESID funding was motivated by discrimination and part of a larger discriminatory conspiracy against the plaintiff, be it on the basis of race (Title VI), gender (Title IX), or disability (Section 504).

First, plaintiff does not explain what benefit he was denied, or how he was substantively harmed. Plaintiff claims defendants withheld VESID funding for his college work, thereby jeopardizing his ability to attend college and causing him hardship. (*See* Compl. at 21.) However, VESID helped fund plaintiff's education, and planned to continue doing so. Plaintiff's fall 2009 and spring 2010 IPEs provided funding for carfare and books, despite the fact that plaintiff remained on academic probation, because VESID recognized plaintiff's grades were improving. Further, even if failing to include tuition was an omission by VESID, as plaintiff claims, VESID retroactively paid the balance of plaintiff's spring 2010 tuition when so plaintiff requested. (Tr. 41–45, 48.) Plaintiff's fall 2010 IPE included funding for tuition, as well as carfare and books, with the condition of a psychiatric assessment. (*Id.* at 137–39.) Therefore, it was plaintiff's refusal to sit for the psychological assessment that caused VESID to cease funding his education.

Second, even if a psychiatric assessment requirement for funding was a form of benefit denial, VESID had legitimate, non-discriminatory reasons for doing so: plaintiff's antagonistic interactions with VESID staff, including attributing misunderstandings and bureaucratic delays and requirements to racism and a conspiracy to cover up racism; his confusion regarding standard college aid forms; and his failure to disclose his prior criminal record. (*See* Tr. 140–41.) Plaintiff offers nothing to rebut the non-discriminatory justifications for requiring a psychiatric assessment. Instead plaintiff's complaint provides only conclusory assertions that the psychiatric assessment and VESID changes to plaintiff's IPE were motivated by discriminatory animus to thwart

plaintiff's educational goals. (*See, e.g.,* Compl. at 9 (plaintiff alleging there had been no mention of his plan being conditioned on a psychiatric evaluation until plaintiff said that "Defendant Weinstein and Defendant Tevington were both thoroughly unscrupulous and a racist").) "As such, the allegations are conclusory and not entitled to be assumed true." *Iqbal,* 556 U.S. at 681.

Furthermore, plaintiff "would need to allege more by way of factual content to 'nudg[e]'" his claim of purposeful discrimination "across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (quoting *Twombly,* 550 U.S. at 570). Plaintiff claims that VESID commonly uses and manipulates mental assessments to cover up their discriminatory conspiracies. (Pl.'s Omnibus Aff. in Opp'n to Defs.' Mot. ¶ 8–9.) Plaintiff contends that Mr. Samuels and Robinson–Lawrence based their IPE work goal recommendations on discriminatory animus because they are guilty of "Uncle Tomism" by "conspiring with their Caucasian supervisor's (sic), solely to keep their job[s]." (Compl. at 20–21.) Plaintiff additionally alleges that Tevington and Weinstein employed a deceptive and discriminatory plan to cover up for Mr. Samuels' prior criminal record and thwart plaintiff's work goal desires. (*Id.* 3–6.) However, no evidence was presented to suggest that Mr. Samuels had a prior criminal record or that Tevington, Weinstein, or Robinson–Lawrence were aware of such a record, even if it existed.

**\*8** Moreover, Tevington previously had granted plaintiff VESID funding for the spring 2010 semester despite plaintiff's academic probation status. (Tr. 41–45, Compl., Ex. A.) Despite confirming that the initial VESID agreement to provide funding, if plaintiff was removed from academic probation, was "for book(s) and carfare" and not tuition, (Compl.9), plaintiff nevertheless accused Robinson–Lawrence of a discriminatory purpose in failing to provide tuition, and Tevington of making a replacement payment to cover the remaining tuition balance from plaintiff's spring 2010 semester only to "cover up" for his employees. (*See* Decision and Order, at 6–7, Def. Decl., Ex. A.)

Consequently, plaintiff has failed to state a plausible claim as to whether defendants' requirement of a psychiatric assessment was because of racial, gender, or disability discrimination under Title VI, Title IX, and Section 504, respectively. Moving defendants' motion to dismiss the Title VI, Title IX, and Section 504 claims against them in their official capacities is granted.

### 3. Claims Against Defendants in Their Individual Capacities are Subject to Dismissal

The Court next considers the claims against defendants in their individual capacities. Plaintiff's claims are either improper individual capacity claims or fail to state a plausible claim for which relief can be granted, and thus moving defendants' motion to dismiss the claims made against them in their individual capacities is granted pursuant to Rule 12(b) (6).

### a. Title II ADA, Title VI, Title IX, and Section 504 Claims Are Improper Individual Capacity Claims

First, "[i]nsofar as [plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001). Second, "Title VI claims cannot be asserted against an individual defendant for the same reason that they cannot be asserted under Title IX—the individual is not a recipient of federal funding." *Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.,* 214 F.Supp.2d 273, 292 (E.D.N.Y.2002). Thus, the Title VI, Title IX, Title II ADA, and Section 504 claims against moving defendants in their individual capacities are dismissed pursuant to Rule (12) (b)(6).

### b. Sections 1983, 1985, and 1986 Claims Against Defendants in Their Individual Capacities Fail to State a Plausible Claim

Moving defendants argue that they are entitled to qualified immunity for claims made against them in their individual capacities. (*See* Def. Mem. at 10–11.) Because their argument rests, however, on whether plaintiff plausibly alleges violation of a constitutional right, (*see id.* at 11), the Court begins by examining whether plaintiff plausibly alleges any discrimination claim pursuant to Sections 1983, 1985, or 1986.

**\*9** To state a proper Section 1983 claim, plaintiff must demonstrate that he was deprived of a constitutional right under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 74 of 97
Sherman v. Harris, Not Reported in F.Supp.2d (2012)
2012 WL 4369766

furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello,* 292 F.3d at 325 (internal quotations and citation omitted).

Similarly, to state a claim of conspiracy to discriminate under Section 1985(3), plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000) (internal quotation marks omitted). In addition, "[t]he conspiracy must be motivated by racial animus." *Id.* Since a Section 1986 claim is predicated on a valid 1985 claim, if the court finds no valid 1985 claim, there is no valid 1986 either. *Id.*

The gravamen of plaintiff's complaint is that the defendants' actions either individually or collectively discriminated against plaintiff on the basis of race, age, or disability, when they suggested different work goals for plaintiff and conditioned VESID funding on plaintiff undergoing a psychiatric evaluation. For the reasons provided in Section C(2)(b), *supra,* the Court finds that plaintiff fails to state a plausible claim and, therefore, the motion to dismiss Sections 1983, 1985, and 1986 claims against defendants in their individual capacities under Rule 12(b)(6) is granted.

**c. The State Law Breach of Contract Claim Against Defendants in their Individual Capacities is Dismissed Without Prejudice**

In order to further "fairness," "judicial efficiency," or to resolve any "novel or unsettled issues of state law," this Court can exercise supplemental jurisdiction over state claims under 28 U.S.C. § 1367(c)(3). *Mauro v. S. New England Telecomms., Inc.,* 208 F.3d 384, 388 (2d Cir.2000). Nevertheless, if all independently supported federal claims have been dismissed, "the balance of factors ... will [usually] point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie—Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Accordingly, this Court declines to exercise supplemental jurisdiction over plaintiff's state law breach of contract claim, which is dismissed without prejudice under Rule 12(b)(6).

*4. Due Process Claim Against Defendants in Both their Official and Individual Capacities*

**\*10** The Court lastly considers plaintiff's claim of due process violation pursuant to Section 1983. "Two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995). Here, plaintiff fails to show that VESID funding is a constitutionally protected property interest or that the December 17, 2010 impartial hearing did not provide adequate procedural due process. Accordingly, defendants' motion to dismiss the due process claim is granted in its entirety.

In *Wasser v. N.Y. State Office of Vocational & Educ. Services for Individuals with Disabilities,* the court reviewed an impartial hearing decision regarding VESID funding pursuant to Section 722 of the Rehabilitation Act and determined it was "doubtful" plaintiff's right to VESID funding rose to the level of constitutionally protected entitlement. *See* 683 F.Supp.2d 201, 215–16 (E.D.N.Y.2008) *aff'd,* 602 F.3d 476 (2d Cir.2010) ("[t]he Rehabilitation Act, when setting forth eligibility requirements for vocational services, specifically states that nothing in that section of the Act 'shall be construed to create an entitlement to any vocational rehabilitation service.' " (quoting 29 U.S.C. § 722(a)(3)(B)). The court explained that:

> The New York State Court of Appeals, in its analysis of VESID's

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 75 of 97
Sherman v. Harris, Not Reported in F.Supp.2d (2012)
2012 WL 4369766

obligations under the Rehabilitation Act, has found that VESID has final authority over the contents of a beneficiary's IWRP, in part because VESID must retain discretion to ensure an appropriate disbursement of limited funds among its clients.

*Wasser,* 683 F.Supp.2d at 215 (citing *Murphy v. VESID,* 92 N.Y.2d 477, 488, 683 N.Y.S.2d 139, 705 N.E.2d 1180 (1998)). This discretion precludes VESID's vocational benefits from rising to the level of a constitutionally protected "entitlement." *Id.* at 215–16. As in *Wasser,* here it is doubtful that plaintiff's right to VESID funding rises to the level of a constitutionally protected "entitlement."

Even if VESID funding was a constitutionally protected entitlement, plaintiff has not alleged plausibly that the impartial hearing failed to provide adequate due process. An IHO aptly merits a "presumption of honesty and integrity." *See Withow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Plaintiff neither provides evidence that the IHO did not meet the qualifications outlined in 8 N.Y.C.R.R. § 247.1(f), nor rebuts the IHO's notice of impartiality given at the beginning of the hearing. (*See* Tr. 7–8, Compl., Ex. A.) To the contrary, the hearing transcript demonstrates the IHO provided plaintiff ample opportunity to make arguments, submit evidence, and confront and cross-examine the witness, despite plaintiff's inappropriate personal attacks, interjections and objections. *See Wasser,* 683 F.Supp.2d at 216.

**\*11** Plaintiff's contentions of an unfair hearing are meritless. Plaintiff's allegation that that the hearing was unfair because the IHO "[wa]sn't there to find out the truth" (Compl.16), erroneously takes out of context the IHO's remark that, "It was not a question of telling the truth." (*See* Tr. 62, Compl., Ex. A.) That remark only relates to plaintiff not being under oath during his cross-examination of a witness. (*Id.*) While plaintiff complains that the IHO should not have allowed Harris to testify, it was plaintiff himself who requested her testimony and allowing a witness to testify is within the powers conferred to the IHO by state law. (Compl. at 17–18; *id.* at 156–58); *see* 8 N.Y.C.R.R. § 247.4; N.Y. A.P.A. Law § 304. Similarly, though plaintiff complained of defendant Samuels' absence at the impartial hearing, there is no indication that any subpoena for Mr. Samuels' appearance had been requested or made by plaintiff or the

IHO. Lastly, plaintiff's contention that the hearing was a "sham" is meritless. (Compl. at 18.) Plaintiff's allegation that, because VESID was the party to contact the IHO, it would be more likely to compensate the IHO if she conducted a "kangaroo-hearing," is an unsupported conclusory allegation. (Compl.15.); *see Iqbal,* 556 U.S. at 662. As is plaintiff's assertion that, by finding some of plaintiff's statements not credible at the hearing, Schneider went "right along with the *MOB* of *RACIST* (VESID) counselors." (Compl. 16–17 (emphasis in original).)

Plaintiff cannot meet either of the two threshold requirements for a due process claim under § 1983, and, therefore, moving defendants' motion to dismiss this claim is granted.

### III. MOTION FOR DEFAULT JUDGMENT

On January 27, 2012, plaintiff moved for entry of default as to defendants Harris and Schneider pursuant to Fed.R.Civ.P. 55(b). (*See* Doc. Entry Nos. 24, 25.) Plaintiff's motion for default judgment is denied because defendants Harris and Schneider were not properly served and, because, as described above, plaintiff's claims are without merit.

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). First, Harris and Schneider were never properly served and, therefore, are not in default. By December 2, 2011, all defendants, except for Harris and Schneider had been served. (*See* Doc. Entry Nos. 5, 9, 10, 13.) The United States Marshals Service ("USMS") made several attempts to serve Harris and Schneider; however, the summonses were returned unexecuted on February 10, 2012, and again on March 20, 2012. (*See* Doc. Entry Nos. 28, 29, 32, 33.) The unexecuted summonses had the address for the VESID office in Brooklyn and indicated that Harris had retired from VESID and Schneider "works in Albany, NY," and, therefore, the summonses would not be accepted. (*See* Doc. Entry Nos. 28, 29.) On November 4, 2011, in a letter to the Court, plaintiff inquired why Samuels was the only defendant who had not been served yet by the USMS, and, on December 5, 2011, in another letter, plaintiff inquired why Harris and Schneider had not entered a notice of appearance yet. (*See* Doc. Entry Nos. 8, 14.) However, upon notification that defendants Harris and Schneider could not be served at VESID, plaintiff took no further steps to ensure defendants were properly served.

**\*12** Second, once a default is determined, a district court has discretion to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d. Cir.1981); Rule 55(b)(2). Here, the Court finds that, even if service had been completed for Harris and Schneider, the motion for default judgment is denied because, for the reasons discussed above, plaintiff's claims are also without merit as to Harris and Schneider. Therefore, the motion for default judgment is denied and the complaint is dismissed.

**CONCLUSION**

For the foregoing reasons, the moving defendants' motion to dismiss the complaint is granted in its entirety. The federal claims are dismissed with prejudice and the state claim is dismissed without prejudice. Plaintiff's motion for default judgment is denied. Accordingly, the complaint is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4369766

---

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Complaint**<br>Calvin SHERMAN, Plaintiff, v. Ms. Laurie HARRIS, Supervisor of the Office Of Vocational and Education for Individuals with Disabilities, Brooklyn Office; Mark Weinstern, Supervisor and Director of Counseling; Joseph Tevington, Supervisor; Rebecca Lawrence, Counselor; James Samuels, Counselor; Judith R. Schneider, Esq., Hearing Officer (All are or have been employed by Vesid); Employees of the University of the State of New York; The State Education Department<br>2011 WL 9172037 | — | E.D.N.Y. | Sep. 09, 2011 | Pleading |
| **2. Docket 1:11cv04385**<br>SHERMAN v. MS. LAURIE HARRIS ET AL | — | E.D.N.Y. | Sep. 09, 2011 | Docket |

**History**

There are no History results for this citation.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 3079611

2023 WL 3079611
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth T. MEYERS, Plaintiff,

v.

Donna BECKER, et al., Defendants.

No. 1:23-CV-173 (DNH/CFH)
|
Signed April 5, 2023

**Attorneys and Law Firms**

Kenneth T. Meyers, 18604, Schoharie County Jail, P.O. Box 159, Howes Cave, New York 12902, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

### I. Background

**\*1** Plaintiff pro se Kenneth T. Meyers ("plaintiff") commenced this action on February 8, 2023, by filing a complaint. See Dkt. No. 1 ("Compl."). He did not pay the Court's filing fee or submit a motion to proceed in forma pauperis ("IFP") and the Court administratively closed the action. See Dkt. No. 3. Plaintiff filed an IFP motion on February 23, 2023, and the Court reopened the case. See Dkt. Nos. 5, 6, 7, 8. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP for the purpose of filing. [1]

[1]    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

### II. Initial Review

#### A. Legal Standard

Section 1915 [2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a

claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

[2]    The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-59 (2007). Pro se litigants are "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is

2023 WL 3079611

applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Plaintiff's Complaint**

Plaintiff submitted his complaint on a civil rights form against Donna Becker, the Commissioner of the Schoharie County Department of Social Services ("DSS"); and Bryanna Folk, who appears to be the mother of his children. See Compl. at 1-3. Plaintiff alleges that "Bryanna Folk falsely accused me of multiple accusations and lies to Schoharie County Department of Social Services to receive welfare assistance. Donna Becker without proof wrote said accusations on paper to verify. Donna Becker states that said accusations from Bryanna Folk are true." Id. at 3. He contends that "Donna Becker has no right to what she is doing. Bryanna Folk has manipulated Schoharie County DSS." Id. Further, plaintiff alleges that "Donna Becker states that it is true to her own knowledge that I am a violent person. That I use illegal substances. Donna Becker duly sworn on a statement on the 14th day of October 2022 and lied on said statement." Id. Plaintiff asserts that "Bryanna Folk wrote false statements and continues to do so. She had my children taken from me and she states that she will do whatever it takes to keep my newborn son from me and my six year old step daughter." Id. Plaintiff checked a box to indicate that he was bringing the complaint against federal official as "a Bivens claim[,]" he references the Due Process Clause of the Fourteenth Amendment, and he seeks $100,000 for his "mental anguish." Id. at 4-5.

**C. Analysis**

**1. Claims Against Bryanna Folk**

**\*3** "Federal jurisdiction is limited, and specified by statute.... Federal courts exercise jurisdiction in cases that present a federal question, or in cases of diversity jurisdiction[.]" Zido v. Werner Enterprises, Inc., 498 F. Supp. 2d 512, 513 (N.D.N.Y. 2006) (citing 28 U.S.C. §§ 1331, 1332). As for diversity jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [ ] citizens of different States." 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires that 'all of the adverse parties in a suit ... be completely diverse with regard to citizenship.' " Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51 (2d Cir. 2000) (quoting E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998)). "[A] party's citizenship depends on his [or her] domicile. Domicile has been described as the place where a person has

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 3079611

'his [or her] true fixed home and principal establishment, and to which, whenever he [or she] is absent, he [or she] has the intention of returning.' " *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir. 1998) (citation omitted).

Plaintiff lists his and Bryanna Folk's addresses as being in New York. *See* Compl. at 2. Plaintiff lists his current address as Schoharie County Jail. *See id.* Attached to his complaint, plaintiff provided an affidavit that was submitted in a Schoharie County Supreme Court case about Donna Becker and Bryanna Folk in which he stated that he has resided in New York for the past ten years. *See* Dkt. No. 1-2 at 2. Based on the information provided, as both parties appear to be domiciled in the same state, plaintiff has not established diversity jurisdiction.

Next, plaintiff references the Fourteenth Amendment and fills out his complaint on a civil rights form. *See* Compl. at 1, 4. However, stating a constitutional amendment does not establish federal question jurisdiction. 42 U.S.C. § "1983 allows a plaintiff to assert a claim for deprivation of rights secured by the Constitution or laws of the United States, if the defendant was acting under color of state law when he deprived plaintiff of his rights." *Gonzalez v. L'Oreal USA, Inc.,* 489 F. Supp. 2d 181, 186 (N.D.N.Y. 2007) (citing 42 U.S.C. § 1983). "For a defendant to be determined to be acting under color of state law, he [or she] must 'fairly be said to be a state actor.' " *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)). "A private person can be subject to liability under this statute 'if he or she willfully collaborated with an official state actor in the deprivation of the federal right.' " *Id.* (quoting *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir. 1993), overruled on other grounds by *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993)).

"[S]ection 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Gonzalez,* 489 F. Supp. 2d at 186 (quoting *Sullivan,* 526 U.S. at 50). "The conduct of private actors can be attributed to the State ... if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.,* 346 F. App'x 627, 629 (2d Cir. 2009) [3] (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008) (per curiam)). "[A] private party may act under color of state law if he or she engages in conduct that constitutes willful

participation in joint activity with the state." *Zavalidroga v. Hester,* No. 6:19-CV-1412 (GTS/TWD), 2020 WL 210812, at *9 (N.D.N.Y. Jan. 14, 2020) (citation omitted), report and recommendation adopted, 2020 WL 633291 (N.D.N.Y. Feb. 11, 2020). "However, a 'conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.' " *Id.* (quoting *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir. 2002)).

[3]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

**\*4** Bryanna Folk is a private person and plaintiff does not plead any state action or any facts that could be construed as asserting a willful collaboration with a state actor. *See* Compl. at 2-5. Plaintiff alleges that Commissioner Donna Becker "states that said accusations from Bryanna Folk are true." *Id.* at 3. However, plaintiff has not alleged any conduct from Bryanna Folk that is conduct typically attributed to a state actor. As such, plaintiff cannot state a § 1983 against Bryanna Folk and it is recommended that the complaint be dismissed without prejudice for lack of subject matter jurisdiction. *See* *Heendeniya v. St. Joseph's Hosp. Health Ctr.,* No. 5:15-CV-01238 (GTS/TWD), 2015 WL 13638618, at *14 (N.D.N.Y. Nov. 30, 2015) ("Because the [ ] [d]efendants are private actors not acting under color of state law with respect to [the p]laintiff's § 1983 claims against them, the Court recommends that [the p]laintiff's § 1983 claims against the St. Joseph's Defendants be dismissed[.]"), report and recommendation adopted, 2016 WL 756537 (N.D.N.Y. Feb. 25, 2016).

### 2. Claims Against Donna Becker

As an initial matter, "state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Jackson v. Battaglia,* 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014). Although Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state, [i]t does not [ ] extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Mulvihill v. New York,* 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (quoting *Woods v. Rondout Valley Cent. Sch. Dist.*

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 3079611

Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)). As such, the claims against Donna Decker, as the Commissioner of the Schoharie County Department of Social Services, are not barred by the Eleventh Amendment.

Plaintiff indicated in his complaint a desire to sue Commissioner Decker in her individual and official capacities. See Compl. at. 2. To the extent he seeks to sue her in her official capacity, "[c]laims against a government employee in his [or her] official capacity [are] treated as a claim against the municipality." Guarneri v. Schoharie Cnty. Dep't of Soc. Serv., No. 1:21-CV-0991 (TJM/ML), 2021 WL 6050305, at *7 (N.D.N.Y. Dec. 21, 2021) (quoting Malay v. City of Syracuse, 638 F. Supp. 2d 203, 311 (N.D.N.Y. 2009)), report and recommendation adopted, 2022 WL 1472562 (N.D.N.Y. May 10, 2022); see also Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) ("[C]laims against a government employee in his official capacity are treated as a claim against the municipality[.]"). Similarly, insofar as plaintiff could be seen as bringing a claim against the Schoharie County DSS, "[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." Mulvihill, 956 F. Supp. 2d at 428 (alteration in original) (quoting Omnipoint Comm'ns, Inc. v. Town of LaGrange, 658 F.Supp.2d 539, 552 (S.D.N.Y. 2009)). The appropriate entity would be Schoharie County. See Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 416, n.4 (S.D.N.Y. 2008) ("The Department of Corrections Medical Department is a County agency, so the proper party [d]efendant is Westchester County.").

As to Schoharie County, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." Id.; see also Parent v. New York, 786 F. Supp. 2d 516, 537 (N.D.N.Y. 2011) ("In an official capacity suit against a municipal employee, a plaintiff must show that the acts were performed pursuant to a policy or custom."), aff'd, 485 F. App'x 500 (2d Cir. 2012) (summary order).

**\*5** In plaintiff's case caption he names "Schoharie County Social Services Donna Becker." Compl. at 1. Throughout his complaint, plaintiff does not state any allegations against

Schoharie County DSS or Schoharie County. See id. at 2-5. Liberally construing plaintiff's complaint, there are no allegations of a policy or custom sufficient to withstand initial review. Rather, the complaint contains allegations concerning only Commissioner Becker's individual conduct. See id. at 2-5. As such, it is recommended that any purported claims against Donna Becker in her official capacity and against the Schoharie County DSS be dismissed as they are not the appropriate entity to sue, and plaintiff has not stated a claim for municipal liability. See Schweitzer v. Crofton, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("[The p]laintiffs' claim against the Suffolk County Department of Social Services must be dismissed because it is not a suable entity."), aff'd, 560 F. App'x 6 (2d Cir. 2014) (summary order); Trombley v. O'Neill, 929 F. Supp. 2d 81, 101 (N.D.N.Y. 2013) ("[The p]laintiff has failed to allege the existence of any policy, custom, or failure to train, as a basis for his § 1983 claims. Accordingly, because [the p]laintiff has failed to state a basis for the liability of Essex County on any of his claims, all claims against [the d]efendants in their official capacities must be dismissed.").

To the extent plaintiff seeks to bring this action against Commissioner Becker in her individual capacity, plaintiff has not sufficiently stated a due process claim. "The Fourteenth Amendment requires that, 'except in emergency circumstances, judicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected.' " Santos v. Syracuse Police Dep't, No. 5:22-CV-1102 (MAD/ATB), 2022 WL 16949542, at *7 (N.D.N.Y. Nov. 15, 2022) (quoting Southerland v. City of New York, 680 F.3d 127, 142 (2d Cir. 2012)). "The emergency exception allows 'government officials [to] remove a child from his or her parents' custody before a hearing is held where there is an objectively reasonable basis for believing that a threat to the child's health or safety is imminent.' " Id. (quoting Gottlieb v. County of Orange, 84 F.3d 511, 518, 520 (2d Cir. 1996)). "Courts 'examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " Phillips v. County of Orange, 894 F. Supp. 2d 345, 372 (S.D.N.Y. 2012) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). "For purposes of procedural due process analysis, parents have 'a constitutionally protected liberty interest in the care, custody and management of their children[.]' " Kia P. v. McIntyre, 235

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 3079611

F.3d 749, 759 (2d Cir. 2000) (quoting Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999)). [4]

[4]    Insofar as plaintiff mentions not being allowed to see his stepdaughter, he does not explain whether he has custody over her. See Compl. at 3. Cases within the Second Circuit have noted that there does not appear to be an established constitutionally protected interest in a non-custodial parent's visitation rights. See Uwadiegwu v. Dep't of Soc. Servs. of the Cnty. of Suffolk, 91 F. Supp. 3d 391, 396 (E.D.N.Y. 2015) (citing Young v. County of Fulton, 999 F. Supp. 282, 286-87 (N.D.N.Y. 1998) ("The plaintiff has failed to set forth even one case which establishes that visitation, as opposed to custody is a constitutionally protected liberty interest of a parent who does not have custody."), aff'd, 160 F.3d 899 (2d Cir. 1998)) ("Plaintiff fails to offer any case law—and the Court's independent research has not produced any—that establishes a non-custodial parent's fundamental liberty interest in visitation."), aff'd, 639 F. App'x 13 (2d Cir. 2016); see also Dabah v. Franklin, No. 19-CV-10579 (ALC), 2022 WL 973834, at *5 (S.D.N.Y. Mar. 31, 2022).

Additionally, "a parent may [ ] bring suit under a theory of violation of his or her right to substantive due process." Santos, 2022 WL 16949542, at *7 (quoting Southerland, 680 F.3d at 142). "Such a claim can only be sustained if the removal of the child would have been prohibited by the Constitution even had the [parents] been given all the procedural protections to which they were entitled." Id. (citation and quotation marks omitted). "To state a claim for a violation of this substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him of custody was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (citation omitted). "It is not enough that the government act be 'incorrect or ill-advised'; it must be 'conscience-shocking.' " Id. (citation omitted).

**\*6** Plaintiff has not sufficiently alleged a procedural or substantive due process claim against Commissioner Becker in her individual capacity. The only allegations plaintiff asserts against Commissioner Becker are that she stated in a sworn affidavit that plaintiff is a violent person who used illegal substances and she affirmed the truth of Bryanna Folk's statements against plaintiff. See Compl. at 3. Plaintiff alleges that Commissioner Becker's sworn statements are false. See id.

Plaintiff has not alleged any facts concerning his custody of his children, the procedures taken to remove the children from his custody, or the duration of the deprivation. See Compl. at 4-5. There are no facts asserting what context Commissioner Becker allegedly lied in or if there were any formal proceedings concerning the Bryanna Folk's of Commissioner's Becker's statements, or the children's removal. See id. at 3-5. As plaintiff has not alleged any procedures that occurred concerning the removal of his children, let alone ones that were deficient, he has failed to state a procedural due process claim. Additionally, other than plaintiff's plain assertion that Commissioner Becker was lying, there are no allegations to indicate that she engaged in conduct that is so egregious or shocking as to state a substantive due process claim, particularly, where it appears that Commissioner Becker swore to the truthfulness of her statements. See Compl. at 3. Plaintiff's bare allegations that Commissioner Becker lied in sworn affidavit are insufficient to state a claim for which relief could be granted under either substantive or procedural due process. As such, it is recommended that the complaint against Commissioner Becker in her individual capacity be dismissed.

### III. Leave to Amend

Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

As it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim against Bryanna Folk, Schoharie County, and Commissioner Donna Becker in her individual capacity, it is recommended that plaintiff be afforded an opportunity to amend his complaint to address

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 3079611

the deficiencies outlined within this Report-Recommendation and Order.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 5) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

 **\*7 ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [5]

[5]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3079611

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:23-CV-00173**<br>Meyers v. Becker et al | — | N.D.N.Y. | Feb. 08, 2023 | Docket |

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (4)**

**Direct History (2)**

1.  Meyers v. Becker 🔗
    2023 WL 3079611 , N.D.N.Y. , Apr. 05, 2023

*Report and Recommendation Adopted by*

2.  Meyers v. Becker
    2023 WL 3073495 , N.D.N.Y. , Apr. 25, 2023

**Related References (2)**

3.  Meyers v. Becker
    2023 WL 4424128 , N.D.N.Y. , May 31, 2023

4.  Meyers v. Becker
    2023 WL 4196914 , N.D.N.Y. , June 27, 2023

2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

2023 WL 6121784
United States District Court, E.D. New York.

HYPED HOLDINGS LLC d/b/
a National Recruiting Group, Plaintiff,
v.
UNITED STATES of America, Internal Revenue
Service, and Matthew James, Defendants.

22-CV-5340 (HG) (JMW)
|
Signed September 19, 2023

**Attorneys and Law Firms**

Joseph S. Fritzson, J.S. Fritzson Law Firm, P.C., Lake Success, NY, for Plaintiff.

Daniel M. Caves, Edward J. Murphy, U.S. Department of Justice Tax Division, Washington, DC, for Defendant United States of America.

**MEMORANDUM & ORDER**

HECTOR GONZALEZ, United States District Judge:

**\*1** Plaintiff Hyped Holdings LLC, d/b/a National Recruiting Group ("Hyped"), filed this action seeking money damages and a declaratory judgment against the United States of America ("United States"), the Internal Revenue Service ("IRS"), and Revenue Officer Matthew James (collectively, "Defendants"), for alleged violations of Plaintiff's constitutional rights pursuant to 18 U.S.C. §§ 241–242, 42 U.S.C. § 1983, 42 U.S.C. § 1985, as well as common law trespass, fraud, negligence, recklessness, and harassment. ECF No. 1 ¶¶ 30–62. Presently before the Court is the United States' motion to dismiss Plaintiff's complaint. ECF No. 18. For the reasons set forth below, the Court grants the United States' motion to dismiss and dismisses Plaintiff's complaint with prejudice.[1]

[1]    Defendants IRS and Matthew James have not appeared in the instant action. As set forth below, *see infra* section III, Plaintiff did not serve Defendants with proper summonses. The Court *sua sponte* dismisses Plaintiff's complaint against all Defendants because "the same grounds for dismissal" of the United States warrant dismissal

of the complaint as to the IRS and Matthew James. *Cartwright v. D'Alleva*, No. 17-cv-5953, 2018 WL 9343524, at \* 9 (S.D.N.Y. Aug. 27, 2018), *aff'd*, 782 F. App'x 77 (2d Cir. 2019); *Cox v. City of New Rochelle*, No. 17-cv-8193, 2020 WL 5774910, at \*9 (S.D.N.Y. Sept. 28, 2020) ("[W]hile Rule 4(m) permits a court to dismiss claims against unserved defendants without prejudice where, as here, the same grounds for dismissal of the served Defendants ... warrant[ ] dismissal of the [complaint] as to the Unserved Defendants[,] dismissal with prejudice is appropriate.").

**BACKGROUND**

Hyped is a temporary staffing company formed in 2017. ECF No. 1 ¶ 10. Philip Missirlian is Hyped's CEO. *Id.* ¶ 24. In September 2020, Hyped and Wonder Partners, Inc. ("Wonder") entered into an agreement, whereby Hyped "purchased three [vendor] contracts, a domain name, a phone name, and [the] trade name of National Recruiting Group ... from [Wonder]." *Id.* ¶ 11. Plaintiff alleges that on or about October 2021, Defendants began an investigation into Wonder for alleged tax code violations and shortly thereafter issued IRS levies against Wonder. *Id.* ¶ 12. Plaintiff further alleges that Defendant James is an IRS revenue officer who was assigned to Wonder's IRS investigation. *Id.* ¶ 13. Plaintiff alleges that the IRS issued levies against several of Hyped's vendors in an attempt to collect tax liabilities from Wonder including: ProHEALTH; Northwell Health Hospice Care Network; Ringo LLC; and Kedrion Biopharma Inc. *Id.* ¶¶ 14, 15, 23. Plaintiff contends that Defendants continued to issue levies against Hyped's vendors despite the fact that: (i) Hyped notified Defendant James that information provided by Ringo LLC was incorrect; (ii) Wonder and Hyped remain completely "independent entities"; and (iii) Wonder's controller signed an affidavit admitting "sole responsibility for any tax payment." *Id.* ¶¶ 15–19, 27.

Plaintiff further alleges that Defendant James falsely told clients and vendors that Missirlian "was under arrest or will be arrested shortly" and/or "bad news" in an effort to injure Plaintiff. *Id.* ¶¶ 24–25. Plaintiff contends that Defendants "utilized the knowingly false information in bad faith to force Hyped vendors and clients to comply with the [tax] levies." *Id.* ¶ 26. Plaintiff further alleges that the "ongoing collection actions and harassment of Hyped, its staff and vendors, has caused an undue hardship on Hyped resulting in significant damages." *Id.* ¶ 27. Lastly, Plaintiff alleges that Defendants

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 89 of 97

Hyped Holdings LLC v. United States, Not Reported in Fed. Supp. (2023)

2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

have commenced an "alter ego" investigation into Hyped intended to injure it. *Id.* ¶ 28.

**\*2** On September 8, 2022, Plaintiff filed its complaint. ECF No. 1. On January 4, 2023, the United States filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, insufficient process, insufficient service of process and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(4), 12(b)(5) and 12(b)(6).[2] ECF No. 18. On February 23, 2023, Plaintiff filed its opposition, and shortly thereafter the United States filed its reply. ECF Nos. 20, 21.

2      Insufficient process pursuant to Rule 12(b)(4) means that the summons is defective. Insufficient service of process pursuant to Rule 12(b)(5) means that the summons was not properly served.

### LEGAL STANDARD

*A. Motion to Dismiss for Lack of Subject Matter Jurisdiction*

When a party moves to dismiss under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first. *Mortillaro v. United States*, No. 21-cv-852, 2022 WL 992713, at \*1 (E.D.N.Y. Mar. 31, 2022).[3] "If a court finds that it lacks subject matter jurisdiction, then the accompanying defenses and objections become moot." *Id.* "A plaintiff asserting subject matter jurisdiction must prove by a preponderance of the evidence that subject matter jurisdiction exists." *Id.*

3      Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

*B. Motion to Dismiss for Failure to State a Claim*

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. When deciding a motion

to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

### DISCUSSION

Plaintiff asserts several causes of action against Defendants including: (i) Fifth and Fourteenth Amendment due process and equal protection claims; (ii) a claim for violations of Plaintiff's constitutional rights pursuant to 18 U.S.C. §§ 241–242, 42 U.S.C. § 1983, 42 U.S.C. § 1985; and (iii) common law claims of trespass, fraud, negligence, recklessness, and harassment. ECF No. 1 ¶¶ 30–62. The United States contends that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction, insufficient process and service of process as well as failure to state a claim. ECF No. 18. The Court addresses each argument in turn.

**I. The Court Lacks Subject Matter Jurisdiction**

The United States argues that Plaintiff's complaint must be dismissed against all Defendants because no waiver of sovereign immunity exists to support subject matter jurisdiction. ECF No. 18-1 at 14. In response, Plaintiff argues that the United States' defense is premature "as a qualified immunity claim is generally addressed by way of summary judgment." ECF No. 20 at 11. For the reasons set forth below, the Court finds that it lacks subject matter jurisdiction to adjudicate Plaintiff's claims.

*A. Defendants Are Immune from Suit Based on the Principle of Sovereign Immunity*

**\*3** "Under controlling authority, because sovereign immunity is jurisdictional in nature, questions of sovereign immunity implicate a court's subject matter jurisdiction and are analyzed under Rule 12(b)(1)." *Arjent LLC v. United States SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014); *see also Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007) ("[T]he terms of [the United States's] consent to be sued in any court define that court's jurisdiction to entertain the suit.").

As to all of Plaintiff's claims against the United States, the IRS—a federal agency—or Matthew James, in his official

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 90 of 97

Hyped Holdings LLC v. United States, Not Reported in Fed. Supp. (2023)

2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

capacity as a revenue officer for the IRS, they are barred. It is well-settled that the United States, its agencies, and federal officers in their official capacity, have sovereign immunity from suit and can only be sued with their consent and under whatever terms Congress may impose. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."); *see Celauro v. United States IRS*, 411 F. Supp. 2d 257, 267 (E.D.N.Y. 2006), *aff'd*, 214 F. App'x 95 (2d Cir. 2007) ("Congress has not specifically authorized suit against the IRS. Therefore, it is not a suable entity."). "Absent an unequivocally expressed statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *Vidurek v. Koskinen*, 789 F. App'x 889, 892–93 (2d Cir. 2019) (summary order) (citing *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010)).

Plaintiff improperly conflates "sovereign immunity" with "qualified immunity" and argues that a qualified immunity defense is premature. ECF No. 20 at 11–13. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[S]overeign immunity[, on the other hand,] means that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. This prohibition against suit extends to "a federal agency or federal officers [acting in] their official capacities." *Roberts v. IRS*, 468 F. Supp. 2d 644, 649 (S.D.N.Y. 2006). Accordingly, Plaintiff fails to meet its burden to address whether the United States, its agencies, and federal officers are immune from suit or whether a waiver applies. *See Vidurek*, 789 F. App'x at 892–93 ("To survive a Rule 12(b)(1) motion to dismiss ... the plaintiff bears the burden of establishing that [its] claims fall within an applicable waiver."). Nevertheless, the Court will briefly address whether a waiver applies.

### B. Plaintiff Has Failed to Meet its Burden to Establish an Applicable Sovereign Immunity Waiver

The alleged jurisdictional bases Plaintiff cites for this action —28 U.S.C. §§ 1331, 1346(a)(1), 1361, 5 U.S.C. § 702, and

26 U.S.C. § 7433—do not constitute a waiver of sovereign immunity in this case. ECF No. 1 ¶ 5.

#### i. 28 U.S.C. § 1331

**\*4** "[T]he general federal question jurisdictional statute, 28 U.S.C. § 1331, does not constitute a waiver of sovereign immunity by the United States." *Mack v. United States*, 814 F.2d 120, 122 (2d Cir. 1987)*; see also Doe v. Civiletti*, 635 F.2d 88, 94 (2d Cir. 1980) ("Section 1331 is in no way a general waiver of sovereign immunity."). Accordingly, there is no basis for waiver of sovereign immunity pursuant to Section 1331.

#### ii. 28 U.S.C. § 1346(a)(1)

Section 1346(a)(1) provides that the United States may be sued "for recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. 1346(a)(1). By its complaint, Plaintiff admits that this action does not seek a recovery of any tax collections. ECF No. 1 ¶ 31 ("Plaintiff reiterates that this action does not concern the assessments issued against Plaintiff by Defendant nor the [levies]."). Plaintiff seeks only a declaratory judgment and money damages for Defendants' alleged constitutional and common law violations. *Id.* at 10–11. Accordingly, the sovereign immunity waiver pursuant to Section 1346(a)(1) is inapplicable.

#### iii. 28 U.S.C. § 1361

"Jurisdiction under the mandamus statute[—28 U.S.C. § 1361—]is limited to actions seeking to compel the performance of a nondiscretionary duty owed to the plaintiff." *Garmhausen v. Holder*, 757 F. Supp. 2d 123, 136–37 (E.D.N.Y. 2010); *see also* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). "In order to invoke mandamus relief, petitioner must show that three elements coexist: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy is available." *Garmhausen*, 757 F. Supp. 2d at 137. Matters within a federal agency's discretion are *not* reviewable under Section

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 91 of 97
Hyped Holdings LLC v. United States, Not Reported in Fed. Supp. (2023)
2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

1361, which is "intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if defendant owes him a clear non-discretionary duty." *Checknan v. McElroy,* 313 F. Supp. 2d 270, 274 (S.D.N.Y. 2004). Plaintiff has not alleged that he has "exhausted all avenues of relief," nor pointed to a "clear non-discretionary duty" that Defendants owe him. *Id.* Instead, Plaintiff alleges that Defendant James, "utilized the discretion afforded to him as [a federal employee] ... and conspired to damage Plaintiff." ECF No. 1 ¶¶ 8, 32–35, 38, 40. Accordingly, the sovereign immunity waiver pursuant to Section 1361 is inapplicable.

### iv. 5 U.S.C. § 702

Under the Administrative Procedure Act ("APA"), "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. A plaintiff may only seek non-monetary relief under the APA, and the APA only provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see Larson v. United States,* No. 16-cv-245, 2016 WL 7471338, at *7 (S.D.N.Y. Dec. 28, 2016), *aff'd* 888 F.3d 578 (2d Cir. 2018) ("The APA waives sovereign immunity for cases seeking relief other than money damages, such as declaratory and injunctive relief, but the APA does not waive sovereign immunity for money-damages claims."). Accordingly, the APA does not provide an applicable waiver of sovereign immunity for Plaintiff's claims for money damages.

**\*5** With respect to Plaintiff's request for a declaratory judgment, the Court finds that Plaintiff has not met its burden to establish that "there is no other adequate remedy in a court." 5 U.S.C. § 704. "[E]ven if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court. An existing review procedure will therefore bar a duplicative APA claim so long as it provides adequate redress." *Larson,* 2016 WL 7471338, at *8. Congress has comprehensively considered which remedies to provide to taxpayers for allegedly unlawful conduct by the IRS and its employees:

> Congress created the Treasury Inspector General for Tax Administration, an entity distinct from the IRS, which investigates claims of

IRS employee misconduct, in an effort to deter such misconduct.... Moreover, the Internal Revenue Code itself prohibits unnecessary examinations or investigations ... and IRS agents are subject to discipline for violations of the Code. Indeed, the third "Taxpayer Bill of Rights," adopted by Congress in 1998 ... provides for termination of the employment of any IRS employee for violating the Code or any IRS rules for the purpose of retaliating against, or harassing, a taxpayer or taxpayer representative. Congress has also provided for the discharge and criminal prosecution of IRS employees engaged in certain misconduct, including making or signing any fraudulent entry in any book, or making or signing any fraudulent certificate, return, or statement.

*Hudson Valley Black Press v. IRS,* 409 F.3d 106, 113 (2d Cir. 2005). In light of Congress' comprehensive scheme, the Court finds that an adequate alternative to APA review in court is available to Plaintiff. Accordingly, the sovereign immunity waiver with respect to Plaintiff's claim for a declaratory judgment is inapplicable in the instant action. *See Larson,* 888 F.3d at 587 ("The APA ... does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.").

### v. 26 U.S.C.A. § 7433

Section 7433 provides that "if, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title ... such taxpayer may bring a civil action for damages against the United States in a district court of the United States." 26 U.S.C. § 7433. However, pursuant to Section 7433(d)(1), "a judgment for damages shall not be awarded ... unless the court determines that plaintiff has exhausted the administrative remedies available to such plaintiff." 26 U.S.C. § 7433(d)(1). Exhaustion of administrative remedies would require a plaintiff to file an

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 92 of 97

Hyped Holdings LLC v. United States, Not Reported in Fed. Supp. (2023)

2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

administrative claim prior to initiating a civil lawsuit. *See* 26 C.F.R. § 301.7433-1(e). The IRS has no record of a valid administrative claim having been submitted. *See* ECF No. 18-2 (Declaration of Revenue Officer Advisor). [4] Because the exhaustion of administrative remedies is a jurisdictional bar to Plaintiff's section 7433 claim, any sovereign immunity waiver is inapplicable. *See Calen v. United States*, No. 18-cv-2183, 2021 WL 4356041, at *5 (E.D.N.Y. Sept. 24, 2021) ("Courts in this Circuit have found that failure to exhaust administrative remedies under Section 7433 creates a jurisdictional bar."); *Roberts*, 468 F. Supp. 2d at 650 ("A plaintiff's failure to comply with the regulation deprives the federal district court of jurisdiction.").

[4]    "[W]hen a court evaluates a motion to dismiss under Rule 12(b)(1), it may—and sometimes *must*—consider extrinsic evidence such as affidavits that contradict the allegations of the complaint in order to determine whether there is federal subject matter jurisdiction." *Wang v. Delphin-Rittmon*, No. 17-cv-586, 2023 WL 2624351, at *5 (D. Conn. Mar. 24, 2023). "Supreme Court caselaw makes clear that district courts have broad discretion when determining how to consider challenges to subject matter jurisdiction.... Where a party offers extrinsic evidence that contradicts the material allegations of the complaint, we have suggested that it would be error for the district court to disregard that extrinsic evidence." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). Here, although Plaintiff alleges it "has exhausted all administrative remedies available within the IRS," ECF No. 1 ¶ 6, a declaration filed by the IRS in support of Defendant's motion to dismiss provides that an IRS employee has "reviewed the official records of the IRS and determined that no IRS advisory units has received an administrative claim under 26 U.S.C. § 7433 or 26 C.F.R. § 301.7433." ECF No. 18-2. In addition, a letter filed by Plaintiff in the instant action suggests that it intended to pursue its claims through administrative proceedings, but has not done so yet. *See* ECF No. 7 at 2.

**\*6**  In light of the doctrine of sovereign immunity, and the failure of Plaintiff to meet its burden to establish an applicable waiver, the Court dismisses Plaintiff's complaint against all Defendants for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## II. The Court Finds That Plaintiff Fails to State a Claim

Because the Court finds that it lacks subject matter jurisdiction to adjudicate Plaintiff's claims, it need not address whether Plaintiff has failed to state a claim pursuant to Rule 12(b)(6). Nevertheless, the Court finds that Plaintiff's claims fail as a matter of law.

### A. Plaintiff's Bivens Claims Fail

Plaintiff asserts Fifth and Fourteenth Amendment due process and equal protection claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). ECF No. 1 ¶¶ 30–42. In *Bivens*, "the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009). "[A] *Bivens* action is brought against individuals, and any damages are payable by the offending officers.... [T]he Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts." *Id.*

Plaintiff alleges that Defendant James's activities conducted in his official capacity as a revenue officer, including an "examination of Plaintiff," and the levying of taxes on "Plaintiff's vendor and clients to prevent them from paying Plaintiff," "have the effect of depriving Plaintiff of its rights to Due Process and Equal Protection Under the Law." ECF No. 1 ¶¶ 30–42. As an initial matter, the Fourteenth Amendment applies only to states, not the federal government. *See District of Columbia v. Carter*, 409 U.S. 418, 424 (1973) ("[A]ctions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment."). Furthermore, a *Bivens* action is not available against an IRS official for any alleged violation of a plaintiff's Fifth Amendment rights as a result of his alleged tax assessment and collection activities. *See Celauro*, 411 F. Supp. 2d at 267 ("[C]ourts have held that *Bivens* actions are not available against IRS officials for tax assessment and collection."); *Colon v. Maddalone*, No. 95-cv-0008, 1996 WL 556924, at *5 (S.D.N.Y. Oct. 1, 1996) (citing cases and noting that "numerous courts have found *Bivens* remedies unavailable in cases involving alleged ... Fifth Amendment violations in connection with tax collections activities"); *see also Hudson Valley Black Press*, 409 F.3d at 113 (finding no violation of plaintiff's

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 93 of 97
Hyped Holdings LLC v. United States, Not Reported in Fed. Supp. (2023)
2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

First Amendment rights and holding that "[b]ecause of the complex remedial scheme that Congress has created, and the plain indication that the failure of Congress to provide a remedy for injuries arising from tax assessment was not inadvertent, every circuit that has considered the appropriateness of a *Bivens* remedy in the taxation context has uniformly declined to permit one"). Accordingly, the Court finds that Plaintiff has failed to state a *Bivens* claim against Defendant James.

### B. Plaintiff Cannot Assert Claims Based on Federal Criminal Statutes

Plaintiff may not use this civil lawsuit to enforce the criminal statutes identified in his complaint—18 U.S.C. §§ 241, 242—and his claims based on those statutes must be dismissed. *See* ECF No. 1 at 9. "The Supreme Court historically has been unreceptive to inferring a private right of action from a bare criminal statute," especially when the statute "provide[s] criminal sanctions for violations but ma[kes] no mention of any private enforcement mechanism." *Schlosser v. Kwak*, 16 F.4th 1078, 1083 (2d Cir. 2021). The Second Circuit has held that sections 241 and 242 provide no such private right of action. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (finding no private right of action under 18 U.S.C. §§ 241 or 242). Accordingly, the Court dismisses Plaintiff's claims based on these criminal statutes.

### C. Plaintiff's Section 1983 Claim Fails

**\*7**  Plaintiff generally asserts a conspiracy to deprive Plaintiff of due process and equal protection under the law pursuant to 42 U.S.C. § 1983 because Defendants "unlawfully and maliciously acted in concert conspiring to injure, oppress, threaten, and intimidate Plaintiff by claiming a debt and seizing Plaintiff's property without due process thereby causing substantial damage to Plaintiff." ECF No. 1 ¶ 44.

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal

rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right secured by the Constitution or laws of the United States; and (2) that they did so under color of state law." *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001).

Because the IRS is a federal agency and Defendant James is a federal officer, Defendants were not acting under the color of *state* law. *See United States v. Acosta*, 502 F.3d 54, 60 (2d Cir. 2007) ("Section 1983, of course, does not apply to allegedly unlawful acts of federal officers."); *see also Lopez v. "Director" of the IRS's Ogden Utah Office*, No. 16-cv-600, 2017 WL 337978, at *5 (D. Conn. Jan. 23, 2017) (holding that "[s]ection 1983 cannot apply to any alleged actions by IRS employees, who are agents of the federal government"); *Guettlein v. United States Merchant Mar. Acad.*, 577 F. Supp. 3d 96, 102 (E.D.N.Y. 2021) ("Section 1983 does not provide a cause of action against the federal government."). Accordingly, Plaintiff's Section 1983 claim against all Defendants must be dismissed.

### D. Plaintiff's Section 1985 Claim Fails

Plaintiff similarly generally asserts that Defendants conspired to deprive Plaintiff of equal protection under the law in violation of 42 U.S.C. § 1985. ECF No. 1 ¶ 44.

"To state a cause of action under § 1985, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 380–81 (E.D.N.Y. 2013). "To assert a conspiracy under Section 1985, a plaintiff must [also] provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Masters v. Mack*, No. 22-cv-6582, 2022 WL 17961211, at *6 (E.D.N.Y. Dec. 27, 2022). "The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Dolan v. Connolly*, 784 F.3d 290, 296 (2d Cir. 2015).

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 94 of 97
Hyped Holdings LLC v. United States, Not Reported in Fed. Supp. (2023)
2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

**\*8**  Plaintiff has failed to plead sufficient facts to support his allegations that Defendants acted in concert to deprive him of the equal protection of the law. Plaintiff's complaint does not allege that any allegedly wrongful action taken by Defendants was "motivated" by race or "class-based, invidious discriminatory animus." *Id.; see generally* ECF No. 1. Accordingly, the Court dismisses Plaintiff's Section 1985 claim.

### E. Plaintiff's New York Common Law Claims Are Barred by The Federal Tort Claims Act

Plaintiff raises several state law claims including trespass, fraud, negligence, recklessness and harassment. ECF No. 1 ¶¶ 46–62. State common law claims cannot be brought directly against federal employees acting within the scope of their employment. "[A] claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government [i.e., the United States] under the [Federal Tort Claims Act ('FTCA'], 28 U.S.C. §§ 1346(b), 2671–80]." *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). The FTCA permits civil actions exclusively against the United States for "injury or loss of property ... resulting from the negligent or wrongful act or omission of any [federal] employee ... acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b), 2679(b). However, the FTCA's sovereign immunity waiver broadly excludes "any claim[s] arising in respect of the assessment or collection of any tax." 28 U.S.C. § 2680(c). Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's common law claims. *See Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 477–78 (2d Cir. 1995) (citing cases holding that the "arising in respect of" language in section 2680(c) should be construed broadly and covers "claims arising out of the government's mechanism for assessing and collecting taxes"); *Capozzoli v. Tracey*, 663 F.2d 654, 657 (5th Cir. 1981) (holding that section 2680(c) bars trespass claim against IRS agent).

### III. The Court Alternatively Dismisses Plaintiff's Complaint for Insufficient Process and Service of Process

Defendant United States moves to dismiss Plaintiff's complaint pursuant to Rules 12(b)(4) and 12(b)(5). ECF No. 18-1 at 31. Defendant alleges that at Plaintiff's request, the

Court issued a single summons directed to the United States Attorney General, but that there is no separate summons directed to the IRS or Defendant James, as required by Rule 4(a)(1)(B) and Rule 4(i)(2). ECF No. 18-1 at 31. Defendant further alleges that Plaintiff failed to issue and serve a copy of the summons on each Defendant as required by Rule 4(b). *Id.* Plaintiff does not address whether all Defendants have been served properly, but contends that it served Defendant United States by serving a copy of the summons and complaint on the Attorney General of the United States. ECF No. 20 at 33. Plaintiff further contends that "if the Court finds that [Defendant United States] was not properly served, in the interest of judicial economy and justice, [it] request[s] that this Court grant Plaintiff leave to re-serve." *Id.*

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Rule 4(i) sets out the procedural requirements for serving the United States, its agencies, and its officers. To serve the United States, a plaintiff must:

**\*9**  (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.;

Fed. R. Civ. P. 4(i)(1). To serve an agency and/or an employee in his official capacity, a plaintiff must serve the United States and send a copy of the summons and complaint by registered or certified mail to the agency and/or employee. *See* Fed. R. Civ. P. 4(i)(2). "Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 132 (S.D.N.Y. 2013). The Court finds that Plaintiff has not met its burden here.

Plaintiff states that it served the United States Attorney General on September 26, 2022, but does not provide proof of service on the United States Attorney's office for the Eastern

Case 1:25-cv-00225-DNH-MJK    Document 4    Filed 04/30/25    Page 95 of 97

Hyped Holdings LLC v. United States, Not Reported in Fed. Supp. (2023)

2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

District of New York. *See* ECF No. 6 (Summons). Moreover, Plaintiff does not provide any evidence that it has served the IRS or Defendant James. Pursuant to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added). Because the Court grants Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, it does not need to alternatively dismiss the action for insufficient service of process. Nevertheless, the Court finds that Plaintiff has not shown good cause for failing properly to serve Defendants since September 8, 2022, and alternatively dismisses Plaintiff's complaint for insufficient process and service of process pursuant to Rules 4(i) and 4(m). *See also Olusi v. Keisler*, No. 07-cv-8776, 2008 WL 3539891, at *2 (S.D.N.Y. Aug. 13, 2008) (granting dismissal for insufficient process where plaintiff failed to meet both sections of Rule 4(i) by failing to serve the United States Attorney or United States Attorney's office for the district where the action is brought).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with prejudice and without leave to amend. Given the many defects in Plaintiff's complaint, the Court denies leave to amend because any such amendment would be futile. *See Oneida Indian Nation of New York v. City of Sherill*, 337 F.3d 139, 168 (2d Cir. 2003) ("While leave to amend a pleading shall be freely granted when justice so requires ... amendment is not warranted in the case of futility. A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

**\*10** SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6121784, 132 A.F.T.R.2d 2023-5909

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 2:22-CV-05340**<br>Hyped Holdings LLC v. United States of America et al | — | E.D.N.Y. | Sep. 08, 2022 | Docket |

**History**

There are no History results for this citation.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.